SAMUEL WEEKS et al., Appellants, *v.* JACOB WEEKS CORNWELL et al. Respondents.

W. died, leaving a large amount of real and personal property, a widow and no descendants. By his will he gave to his widow absolutely certain real and personal estate and a life estate in four lots in the city of New York. The will contained seventeen clauses, each devising parcels of land to his executors in trust, to pay the net income to a person named during life. The land mentioned in each clause was, on the death of the life beneficiary, devised to his wife and heirs, or where there was no wife to his heirs or issue. In several of the clauses was contained a provision that the issue of such life beneficiaries as shall have died shall take the parents' share. A lot of land was also devised to P. in fee, and one to each of two servants of the testator, D. and C. By the twenty-fourth clause the testator gave the residue of his estate, real and personal, not "bequeathed in fee or upon trust," to his executors, " to use the same as in their judgment they deem to be for the best interest" of the whole estate; and, to raise money for that purpose, he authorized them to mortgage "the piece or parcel of land being the residue and remainder" of his estate, and after paying taxes, etc., and such amounts as they might deem necessary for

repairs, etc., "to divide and pay the remainder at any time within ten years to each and every of my legatees hereinbefore named," except D. and C., "in the proportion in which his, her or their specified legacies hereinbefore named and bequeathed bear to each other, the heirs of such legatee as may have died to take the share which said legatee would, if living, have been entitled." By the twenty-fifth clause, upon the termination of the real estate trusts where the fee was undisposed of, the testator gave "the fee of said real estate trust property" to his legatees, excepting D. and C., to be divided among them in the same proportion as specified in the twenty-fourth clause ; the testator declaring his meaning to be to regard each of his legatees, except D. and C., "a legal heir" to his estate, "limited to the said trust property in the proportion named." The real estate referred to in the twenty-fourth and twenty-fifth clauses consisted of the four lots devised to the widow for life. In an action brought after the death of the widow, for partition of said real estate, *held* that under the twenty-fifth clause said real estate was legally devised, the devisees being the seventeen persons named as beneficiaries in the seventeen trusts, together with P. ; that the proceeds of sale should be divided among them, as to the seventeen life beneficiaries, in proportion to the value of the specific real estate from which they were respectively entitled to the income, and as to P., in proportion to the value of the fee of the land given to him ; that the only real estate trust attempted to be created by the twenty-fourth clause was to mortgage it, which trust was invalid because not for the benefit of legatees or for the purpose of satisfying any charge upon the land (1 R. S. 728, § 55) ; that even if valid it vested no estate in the trustees (§ 56) but was valid only as a power, and so in any event it did not suspend the power of alienation, or prevent the vesting of the estate in the devisees mentioned in the twenty-fifth clause.

(Argued December 18, 1886· decided February 1. 1887.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 4, 1886, denying a motion for a new trial, made pursuant to section 1001 of the Code of Civil Procedure, after entry of an interlocutory judgment.

This action was for partition.

Jacob Weeks died in the city of New York on the 9th day of September, 1881, leaving a widow, a will, a large amount of real and personal property and no descendants. His widow died on the 7th day of April, 1882 ; both he

and she were, at death, upwards of eighty years old.  In his will, which was dated May 9, 1881, he gave to his wife absolutely a large amount of real and personal property, and he devised to her during her life four lots, and the buildings erected thereon, situated upon Fifth avenue in the city of New York, valued at $675,000.  He devised several lots of land to his executors, upon trust, to collect the rents thereof during the life of his adopted son, Jacob Weeks Cornwell, and, after expending therefrom such amounts as they deemed necessary to keep the premises in good order and repair and properly insured against loss and damage by fire, to pay the remainder of such rents, when collected, to Cornwell, during his life; and at his death the said lots with the buildings thereon were devised to his wife, Virginia Cornwell, and to his children, Ida Van Cott, Clarissa Lyon and Millard Filmore Cornwell, share and share alike, the issue of such as may have died to take the share to which his, her or their parent would, if living, have been entitled.  In sixteen other clauses of the will the testator devised particular parcels of land to his executors, upon similar trusts, for other beneficiaries.  After the death of each life beneficiary the land mentioned in each clause was devised to the wife and heirs of such beneficiary, share and share alike, or, where there was no wife, to the heirs or issue of such beneficiary; several of the clauses contain a provision that the issue of such life beneficiaries as shall have died shall take the parents' share.  The testator also devised in fee a lot of land to William V. Parschall, and in the twenty-second and twenty-third clauses he devised in fee a lot of land to each, Ann Davey and Hugh Collins, two of his servants.  By the twenty-seventh clause the testator authorized and directed his executors to repair or rebuild the buildings upon any of the lots of land devised to them in trust if the buildings should be partially injured or wholly destroyed by fire during the continuance of the trust, and in order to raise money for that purpose he empowered them to mortgage the parcel or parcels of land upon which the buildings should be situated and charge the payment of such

mortgage upon such parcels of land respectively. By the twenty-ninth clause the testator authorized and directed his executors, in case he should die leaving any building or buildings upon any of the lots of ground devised in an unfinished state, or having executed any contract or contracts for the erection of any building thereon, to finish or complete such building, and for that purpose he empowered them to mortgage the parcel of land upon which such unfinished building might be situated, or to which such contract might relate, and charge the payment of the mortgage upon such parcels of land respectively. The thirtieth clause authorized and directed the executors immediately upon proving the will, or as soon thereafter as possible, to pay all taxes, assessments, mortgages or incumbrances whatsoever against the testator's property at the time of his death out of his personal estate, and if the personal estate should be insufficient for that purpose, then he directed that any deficiency that might exist should be paid out of the income of his entire estate, except the income from the property devised for life to his wife. By the thirty-first clause the testator authorized and directed his executors to pay the annual taxes and all assessments upon the property devised to them in trust out of the income thereof respectively, and directed his wife to pay the annual taxes and all assessments upon the property devised to her for life. He appointed his wife, Jacob Weeks Cornwell, Samuel Weeks, Jr., and George Washington Weeks, executors of his will. The twenty-fourth and twenty-fifth clauses of the will are as follows: " *Twenty-fourth.* All the rest, residue and remainder of my estate, real and personal, that I may own at the time of my death, and not hereinbefore bequeathed in fee or upon trust, I give, devise and bequeath to my said executors upon trust, to use the same as in their judgment they deem to be for the best interest of my whole estate, and in order to raise money for that purpose I empower them to mortgage the piece or parcel of land, being the residue and remainder of my estate and not hereinbefore

disposed of in fee or upon trust, and after paying and keeping paid all taxes and assessments upon said property, and expending such amounts as they may deem necessary to keep the said premises in good order and repair, and properly insured against loss and damage by fire, to divide and pay the remainder at any time within ten years to each and every of my legatees hereinbefore named, except Ann Davey and Hugh Collins, in the proportion in which his, her or their specified legacies hereinbefore named and bequeathed bear to each other; the heirs of such legatee as may have died to take the share to which said legatee would, if living, have been entitled." "*Twenty-fifth.* Upon the termination of the real estate trusts herein contained, where I have not hereinbefore disposed of the fee of my real estate, I do hereby give, devise and bequeath the fee of said real estate trust property to each and every of my legatees herein named, except Ann Davey and Hugh Collins, to be divided among such legatees in the proportion in which his, her or their specific legacies hereinbefore named and bequeathed bear to each other. The heirs of such legatees as may have died to take the share to which said legatee would, if living, have been entitled; meaning and intending by this to regard each of my legatees, except Ann Davey and Hugh Collins, a legal heir to my estate, limited to the said trust property in the proportion named."

The real estate put in trust for the seventeen life beneficiaries was of the value of more than $1,300,000. The testator owned at his death the same real estate which he owned at the date of his will, and it is conceded that the real estate referred to and disposed of in the twenty-fourth and twenty-fifth clauses consisted of the four houses and lots in Fifth avenue which were devised to his wife for life.

This action was commenced by certain of the heirs against the legatees and devisees mentioned in the will and other heirs of the testator for the partition of the four houses and lots, the claim of the plaintiffs being that the disposition of them made by the will was illegal and void, that they

descended to the testator's heirs and were to be divided among them as if he had died intestate. The court at Special Term held that, under the twenty-fifth clause the property was legally and effectually devised, and that the devisees in fee were the seventeen persons mentioned as beneficiaries in the seventeen trusts created by the will, together with Parschall, who was a devisee of a parcel of land in fee; and by the interlocutory judgment it ordered that the four houses and lots should be sold, and the proceeds thereof divided, as to the seventeen beneficiaries, in proportion to the value of the specific real estate from which they were respectively entitled to the income, and as to Parschall in proportion to the value of the fee of the land given to him.

*E. Ellery Anderson, S. H. Thayer, A. H. Stoiber, F. E. Smith, Wm. T. Graff,* for appellants. The fact that the twenty-fourth clause of the will is void is no reason why it should not be referred to to ascertain the testator's meaning. (*Van Nostrand* v. *Moore,* 52 N. Y. 12.) The remainder did not vest because the persons who are to take cannot be ascertained until the death of all the seventeen life beneficiaries. (3 R. S. [Banks 7th ed.] 2176, § 13; *Hobson* v. *Hale,* 95 N. Y. 588, 610–614; *Knox* v. *Jones,* 47 id. 389–398; *Smith* v. *Edwards,* 88 id. 92, 104; *Purdy* v. *Hayt,* 92 id. 446; *Rice* v. *Barrett,* 102 id. 161.) The seventh conclusion of law and the seventh clause of the judgment, which hold that the seventeen life beneficiaries and William V. Parschall are the only persons entitled to the Fifth avenue property, are erroneous. (*Giles* v. *Nelson,* L. R. 6 H. L. Cas. 24.) Under the construction which limits the words "legatees herein named" to the seventeen life beneficiaries and to William V. Parschall the remainders are future estates, and futurity is of the essence of the gift. These remainders cannot be accelerated and must, therefore, fall with the intervening trust. (*Smith* v. *Edwards,* 88 N. Y. 92, 103, 109; *Benedict* v. *Webb,* 98 id. 460; *Hobson* v. *Hale,* 95 id. 588, 613; *Rice* v. *Barrett,* 102 id. 161.) If a clause in a will

offend against the rule against perpetuities, in construing the will such clause cannot be disregarded, but must be read as the expression of the testator's intention as though no such rule existed. (*Heasman* v. *Pearse*, L. R. 7 Ch. App. Cas. 275, 283; *Dungannon* v. *Smith*, 12 Cl. & Fin. 546, 625, 626; *Pearks* v. *Mosely*, 5 Eng. L. R. App. Cas. 714; *Rice* v. *Barrett, supra.*)

*W. B. Putney* for Martha Trask, appellant. The twenty-fourth and twenty-fifth clauses of the will are in violation of the statute against perpetuities. (*Hobson* v. *Hale*, 95 N. Y. 614, 615; *Colton* v. *Fox*, 67 id. 349; *Brewer* v. *Brewer*, 11 Hun, 147; 72 N. Y., 603; *Post* v. *Hover*, 33 id. 593; *Garvey* v. *McDevitt*, 72 id. 556; *Rose* v. *Rose*, 5 Abb. Ct. App. Dec. 108; *Hawley* v. *James*, 16 Wend. 61; *Rice* v. *Barrett*, 102 N. Y. 161.) It is against the settled rules of construction to strike out any words from a will because they offend against the perpetuity rule. (*Heasman* v. *Pearse*, L. R. 7 Ch. App. 283; *Pearks* v. *Moseley*, L. R. 5 App. Cas. 719; *Colton* v. *Fox*, 67 N. Y. 349; *Wetmore* v. *Parker*, 52 id. 464; *Van Nostrand* v. *Moore*, id. 21; *Post* v. *Hover*, 33 id. 597; *Smith* v. *Edwards*, 88 id. 102; *Schettler* v. *Smith*, 41 id. 328; *Burrell* v. *Boardman*, 43 id. 254; *Waring* v. *Waring*, 17 Barb. 555.) The trust of the twenty-fourth clause of the will was intended by the testator to be subservient to the prior real estate trusts. (3 Jarm. on Wills [Rand. & Talcott's ed.] 67, 72, 85; *Bennett* v. *Garlock*, 10 Hun, 339.) The testator did not intend by the last sentence of the twenty-fifth clause to make any different disposition from what he had just before made, or at any different time. (*Benedict* v. *Webb*, 98 N. Y. 465.)

*Flamen B. Candler* for respondents. The intention of the testator must be carried into effect if that can be done without violating any rule of law. (3 R. S. [Bank's 7th. ed.] 2205, § 2; *Keteltas* v. *Keteltas*, 72 N. Y. 312, 314, 315.) An intention which would invalidate a will is never imputed to a testator if it can be avoided. (*Manice* v. *Manice*, 43 N. Y.

303, 362, 368, 371; *DuBois* v. *Ray*, 35 id. 162; *James* v. *Beasley*, 14 Hun, 520, 523.) The law prefers a construction of a will which prevents a partial intestacy to one which permits it. (*Byrnes* v. *Baer*, 86 N. Y. 210.) The twenty-fourth section of the will is void, as by that section it was sought to create a trust not authorized by the laws of this State. (3 R. S. [Bank's 7th ed.] 2181, § 55.) The limitation over of the remainder by the twenty-fifth section of the will, is not affected or impaired by the failure for legal invalidity of the trust attempted to be created by the twenty-fourth section; and as those two sections are distinct, separate and independent of each other, the remainder is not defeated by cutting off the trust. (1 R. S. 729, § 61; *Manice* v. *Manice*, 43 N. Y. 303–384; *Oxley* v. *Lane*, 35 id. 340–350; *Harrison* v. *Harrison*, 36 id. 543, 547; *Van Schuyver* v. *Mulford*, 59 id. 426, 432; *Wager* v. *Wager*, 96 id. 164–171; *McLean* v. *Freeman*, 70 id. 81–85; *Adams* v. *Perry*, 43 id. 487; 3 R. S. [Bank's 7th ed.] 2182, § 61.) The twenty-fourth and twenty-fifth sections of the will do not provide for one general scheme; nor are those two sections so connected or interwoven with each other as to form one entire gift, so as to make the remainder over void; nor does the vesting of the remainder depend upon any condition annexed to either of those sections; and, as those sections are severable and distinct from each other the devise, under the twenty-fifth section, must be sustained. (*Rice* v. *Barrett*, 102 N. Y. 161; *Garvey* v. *McDevitt*, 72 id. 556; *Knox* v. *Jones*, 47 id. 389; *Coster* v. *Lorillard*, 14 Wend. 265; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Holmes* v. *Mead*, id. 332; *Harris* v. *Clark*, 7 id. 242; *Benedict* v. *Webb*, 98 id. 460–466; *Savage* v. *Burnham*, 17 id. 561; *Livingston* v. *Green*, 52 id. 118–123; *McKinstry* v. *Sanders*, 2 Sup. Ct. [T. & C.] 181, 187; *S. C.* 58 N. Y. 662; *Moore* v. *Lyons*, 25 Wend. 119; *Selden* v. *Vermilya*, 3 N. Y. 325; *Manice* v. *Manice*, 43 id. 303; *Robert* v. *Corning*, 89 id. 225; *Adams* v. *Perry*, 43 id. 487; *Van Schuyver* v. *Mulford*, 59 id. 426.) The twenty-fifth section of the will is valid, and by that section the testator legally and effectually

disposed of the Fifth avenue property to his legatees by devising to them absolutely the fee of the same, postponed in enjoyment only, until the termination of the widow's life estate therein. (1 Jarman on Wills, 643 ; *Manice* v. *Manice*, 43 N. Y. 368.) The power to alienate the Fifth avenue property is not suspended by the twenty-fifth section of the will, and the devise of the remainder in fee of that property by that section is valid. (3 R. S. [Bank's 7th ed.] 2176, §§ 14, 15.) The remainder limited over by the twenty-fifth section is a vested one, and by that section the fee of the Fifth avenue property, upon the testator's death, became absolutely vested in his legatees subject only to the widow's life estate. (3 R. S. [Bank's 7th ed.] 2176 ; 1 R. S. 723 [Old ed.] ; *Ives* v. *Legge*, 3 Tr. R. 488 ; 4 Kent's Com. 204 ; *Leonard* v. *Kingsland*, 12 Daly, 485 ; *Moore* v. *Littel*, 41 N. Y. 66 ; 2 Washburn on Real Prop., 510 ; *Livingston* v. *Greene*, 52 N.Y. 118, 123 ; *Moore* v. *Lyons*, 25 Wend. 144 ; *Embury* v. *Sheldon*, 68 N. Y. 227, 236 ; *Hennessy* v. *Patterson*, 85 id. 91 ; *Manice* v. *Manice*, 43 id. 368 ; *Purdy* v. *Hayt*, 92 id. 446 ; *DeKay* v. *Irving*, 5 Den. 646.) The testator, in devising the remainder in fee of the Fifth avenue property by the twenty-fifth section of his will to his "legatees," did not thereby intend to include the remaindermen, who would answer to that description only upon the termination of all the trusts created by him, but thereby intended to include his primary beneficiaries, to wit, the seventeen life tenants and the one devisee in fee. (*Damrat* v. *Jones*, 2 Dem. 602 ; *In re Karr*, 2 How. Pr. [N. S.] 405 ; *Smith* v *Edwards*, 88 N. Y. 92, 103 ; 3 R. S., 2287, § 52 [Old ed. 66] ; *Mowatt* v. *Carow*, 7 Paige, 328 ; *Bishop* v. *Bishop*, 4 Hill, 138 ; *Dunn* v. *Bagshaw*, 6 Term. R. 518 ; *Van Beuren* v. *Dash*, 30 N. Y. 393, 444 ; *Quackenbos* v. *Kingsland*, 102 id. 128 ; *Leonard* v. *Kingsland*, 12 Daly, 485 ; *Livingston* v. *Greene*, 52 N. Y. 118 ; *Moore* v. *Lyons*, 25 Wend. 119 ; *Converse* v. *Kellogg*, 7 Barb. 590 ; *Embury* v. *Sheldon*, 68 N. Y. 227 ; *Wetmore* v *Parker*, 52 id. 450, 463.) The standard of equalization among the "legatees" is the proportion in which his, her or

their specific legacies hereinbefore named and bequeathed bear to each other; and each legatee's share is determined by taking the fee value of the property devised to him or her in fee or upon trust by the respective sections of the will, and then the aggregate fee value of all the property devised by all the sections, 3 to 21, inclusive, and the fractional part of each legatee will be as the value of the former bears to the value of the latter. (Code Civ. Pro., § 976; *Bailey* v. *Bailey*, 97 N. Y. 460–470; *Monarque* v. *Monarque*, 80 id. 320–324; *Sauter* v. *N. Y. C. & H. R. R. R. Co.*, 6 Hun, 446, 451; *Davis* v. *Standish*, 26 id. 608, 616; *Schell* v. *Plumb*, 55 N. Y. 592; Laws of 1870, chap. 717, § 5; Code Civ. Pro., §§ 1569, 1570; *Jackson* v. *Brown*, 13 Wend. 437, 445.) The remaindermen to take in addition to the eighteen persons referred to, if they take at all, are those only who were in esse at the time of the testator's death. (1 Burrill's L. Dict. 297 [Tit. Class.]; *Lorillard* v. *Coster*, 5 Paige, 172, 185; *Campbell* v. *Rawdon*, 18 N. Y. 412; 1 Redf. on Wills, 379, 380, 385, 386; *De Witt* v. *De Witt*, 11 Sim. 41; 2 Jarman on Wills, 10, 616, 688, 712; *Holloway* v. *Holloway*, 5 Ves. 399; 2 Watson's Eq., 1282.) If the gift to the legatees includes, besides the eighteen persons, all those persons who will answer to the description of remaindermen when the trusts expire, it is, nevertheless, capable of enforcement, and the devise is not void. (*Monarque* v. *Monarque*, 80 N. Y. 320, 324.)

*Abner C. Thomas* for respondents. The title to the Fifth avenue real estate was not vested in the executors under the twenty-fourth clause. (1 R. S. 729, § 56; 1 Edm. Stat. 678, § 56; *Robert* v. *Corning*, 89 N. Y. 225; 23 Hun, 299.) Since the executors took no title under the twenty-fourth clause, the title vested at once in the "legatees" under the twenty-fifth clause, subject to the execution of the powers contained in the twenty-fourth clause, and the rule against perpetuities was not violated. (*Robert* v. *Corning*, 89 N. Y. 225; 23 Hun, 229; 1 R. S. 729, § 56.) The invalidity of the twenty-fourth clause will not prevent the property from passing to the devisees of the testator under the twenty-

fifth clause. (*Van Kleek* v. *Dutch Church*, 6 Paige, 600; 20 Wend. 457; *James* v. *James*, 4 Paige, 115; 1 R. S. 729, § 61; 1 Edm. Stat. 679, § 61; *Rose* v. *Rose*, 4 Abb. App. Dec. 108; *Greene* v. *Denis*, 6 Conn. 293; *Ackerman* v. *Gordon*, 67 N. Y. 63; *Livingston* v. *Greene*, 52 id. 118; *Campbell* v. *Rawdon*, 18 id. 412; *Lorillard* v. *Coster*, 5 Paige, 172, 185, 217; *In re McClymant*, 16 Abb. [N. C.] 262; *Tucker* v. *Tucker*, 5 N. Y. 408–420.) If the intention of the testator was that the legatees should share in the proportions which the values of their life estates bore to the whole value of the Fifth avenue property, the computation made by the referee was correct, and the use of the Northampton tables for this purpose was justified by law. *Monarque* v. *Monarque*, 80 N. Y. 324; *Hollis* v. *Drew Theo. Sem.*, 95 id. 166; *Lauter* v. *N. Y. C. R. R. Co.*, 6 Hun, 446, 451; *Davis* v. *Standish*, 26 id. 608, 616; *Schell* v. *Plumb*, 55 N. Y. 592; Laws of 1870, chap. 717, § 5.)

*John F. Coffin* and *Martin J. Keogh* for respondents. The General Term had power on the appeal from the judgment of Mr. Justice LARREMORE, to modify judgment and grant a new hearing, and to send it to a referee to ascertain and report such facts as were essential to make a complete record in conformity with the judgment as modified. (Code of Civ. Pro., § 1317; *Gracie* v. *Freeland*, 1 N. Y. 228; *Tracy* v. *Talmadge*, 1 Abb. Pr. 460; *In re Opening Seventh Ave.*, 29 How. Pr. 180; *Salmon* v. *Gedney*, 75 N. Y. 479.) Although the twenty-fourth clause of the will is invalid, yet the court may refer to it for the purpose of deriving evidence as to the final intention of the testator in disposing of his property. (*Wetmore* v. *Parker*, 52 N. Y. 450, 464; *Lauter* v. *N. Y. C. & H. R. R. R. Co.*, 6 Hun, 446, 451; *Davis* v. *Standish*, 26 id. 608, 616; *Schell* v. *Plumb*, 55 N. Y. 592; *Monarque* v. *Monarque*, 80 id. 320, 324; Code of Civ. Pro., § 1570; *Nannock* v. *Horton*, 7 Vesey, 391; *Pirnie* v. *Purdy*, 19 Barb. 60.)

*J. Montgomery Peters* for repondents. The direction of the testator that on the death of the widow the property be

divided between those who are entitled to it in the proportion in which his, her or their specific legacies, etc., bear to each other, refers to that time. (*Manice* v. *Manice*, 43 N. Y. 303.) Although the gift to William V. Parschall, of his share in the Fifth avenue property is made by the same clause of the will by which it is made to the rest, a total failure of their interests in that property would not affect any right of his in it, as the gift to him is in no wise connected with the gifts to the others. (*Savage* v. *Burnham*, 17 N. Y. 571.)

EARL, J. This appeal imposes upon us the difficult duty of construing the twenty-fourth and twenty-fifth clauses of this will. These clauses were drawn with great unskillfulness and carelessness, and thus their meaning is very obscure and uncertain. As they concern and attempt to dispose of a very large amount of property, they must have been the subject of some deliberation, and the testator evidently had some meaning which is embodied, however inaptly, in the language used. What that meaning is, it is for us to ascertain, if we can. If it is unascertainable, the case is the same as if no attempt had been made to express any, and the language used can have no effect. If several meanings may be attributed to the language, each supported by equally strong reasons and probabilities, no one of them can be accepted, as that which the testator meant to express. Important rights cannot be based upon mere conjecture.

But, in the construction of wills as in the determination of questions of fact, and other questions of law, it is not to be expected that absolute certainty can always be attained. Upon questions of fact it is sufficient that there is a balance of evidence or probabilities in favor of one side or the other of the dispute, and upon such balance courts will rely in deciding the weightiest issues. So in the construction of written instruments, courts will scrutinize the language used, and however confused, uncertain and involved it may be, will give it that construction which has in its favor the balance of reasons and probabilities, and will act

upon that.   The intent of a testator may sometimes be missed, but such is the infirmity of language and human judgment that such a result is sometimes unavoidable.   As said in Jarman on Wills (Vol. 1, p. 643): " In the construction of wills, the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators. No degree of technical informality or grammatical or orthographical error, nor the most perplexing confusion in the collection of words, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will and the whole carefully weighed together."

The testator did not intend to die intestate as to any of his real estate, and it is therefore our duty, if we can, to so construe his will as to effectuate that intention.   And we must also observe the rule which requires courts, if possible, so to construe any disputed provision in a will as to uphold it and make it valid, and thus enforce the maxim *ut res magis valeat quam pereat.*

The testator made such provision for his heirs as he desired, and by upholding these clauses in his will as the courts below have construed them, we think his intention will be most nearly observed.

The only real estate trust the testator attempted to create in the twenty-fourth clause, is one to mortgage the real estate therein mentioned.   He devised and bequeathed all the residue of his real and personal estate to his executors upon trust to use the same as in their judgment they deemed to be for the best interest of his whole estate.   The word " use " is wholly inappropriate to real estate.   This was a disposition to take effect at his death, and he had previously in his will given to his wife a life estate in these houses and lots, and hence she, during her life, was entitled to the rents and profits, and for that reason the testator could not have intended that his executors were to use the houses and lots by receiving the rents and profits thereof.   In writing that

word the draughtsman must have had in mind mainly and most prominently the personal property. That was to be used for the benefit of his whole estate, and then it is specified how the real estate was to be used, to wit: By raising money upon it by mortgage, and that was the only use that could be made of it consistently with the prior disposition of it to his wife for life. What the testator intended was to give to his executors the right to use his personal and real estate, the former in any way for the best interest of his whole estate, the latter to raise money by mortgage for the benefit of his whole estate; and it was the personal property and the money thus realized, upon the real estate which, after paying and keeping paid all taxes and assessments upon the houses and lots and expending such amounts as the executors might deem necessary to keep the houses in repair and properly insured, which at any time within ten years they were to divide and pay to each and every of his legatees mentioned. It is clear that the words "to divide and pay the remainder," have no reference to the real estate. The word "pay" is not properly used to denote the distribution or division of real estate. The testator could not have intended to give his executors the power to divide and deliver the real estate to the legatees at any time within ten years, and thus put it in their power to interfere with his wife's life estate. Then, too, if those words relate to real estate, the twenty-fifth clause providing for the final disposition of the real estate was unnecessary. The twenty-fourth clause makes a final disposition of the personal property, including the balance of money realized by mortgaging the real estate, and the twenty-fifth clause makes a final disposition of the real estate.

Hence there was an attempt to create two trusts by the twenty-fourth clause: One was a trust to mortgage the real estate, and that was invalid because the mortgage was not for the benefit of legatees or for the purpose of satisfying any charge upon the land. (1 R. S., 728, § 55.) But even if valid, it would have vested no estate in the trustees as it is

provided in section 56 that "a devise of land to executors or other trustees to be sold or mortgaged, when the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power, and the land shall descend to the heirs, or pass to the devisees of the testator, subject to the execution of the power." Section 58 provides that "where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust;" and section 59 provides that "in every case where the trust shall be valid as a power, the land to which the trust relates shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power." Hence, whether the trust attempted to be created in the twenty-fourth clause was valid or invalid, it did not suspend the power of alienation, nor prevent the vesting of the estate in the devisees mentioned in the twenty-fifth clause.

It is not important to determine whether the attempted trust can have effect as a power, because if it can, it still in no way interferes with or affects the disposition of the real estate made in the twenty-fifth clause. It may, however, be stated that the power has not been executed and no party to this action claims that it ought to be, or that it is so definite in its objects that it can be.

There was also an attempt to create a trust in the personal property as above mentioned, which might last for ten years, and which was probably expected to terminate at the death of the widow within that time. It is not important to determine whether that is a valid trust, as it in no way concerns the real estate, and all the parties to this action have assumed it to be invalid.

There was nothing, therefore, in the twenty-fourth clause which could in any way interfere with or defeat the full and entire operation of the twenty-fifth clause. That provides

that "upon the termination of the real estate trusts herein contained where I have not hereinbefore disposed of the fee of my real estate, I do hereby give, devise and bequeath the fee of said real estate trust property" to the legatees named. It is claimed by the appellants that the words "real estate trust herein contained" have reference to all the eighteen real estate trusts created or mentioned in the will, and hence that the real estate could not vest under that clause in the devisees mentioned until the termination of all of those trusts, and that so the clause is invalid for various reasons. But, we think, these words refer to the real estate trust mentioned in the preceding clause. It is true that the plural "trusts" is used. That may have been from the inadvertence of the scrivener, or because he had in mind the four houses and lots, or the various matters to which the money realized by mortgage was to be devoted. But it is clear that the "trusts" referred to related to real estate of which the testator had not disposed of the fee, and the real estate mentioned in the preceding clause was the only real estate of which he had not disposed of the fee. Therefore, the words "upon the termination of the real estate trusts" can have no meaning or effect attributed to them, as the trust attempted to be created had no term, no beginning or end, and the devise of the real estate took effect at once upon the testator's death as a vested remainder subject to the life estate previously given to his wife.

The only remaining difficulty of a serious nature which we encounter in the construction of these clauses is to determine who were meant by "the legatees." The devise was to "each and every of my legatees herein named, except Ann Davey and Hugh Collins, to be divided between such legatees in the proportion in which his, her or their specific legacies hereinbefore named and bequeathed bear to each other." Strictly speaking there were no legatees mentioned in the previous clauses of the will except his wife. She was the only person to whom personal property was bequeathed. All the other beneficiaries were given either real estate or the

income of real estate through the hands of trustees. The word "legatees," as used here, cannot, therefore, have its strict legal significance as one who takes personalty under a will and it was not intended that it should. It was clearly meant to include persons to whom real estate, or the income of real estate had been given, and this is made evident from the fact that Ann Davey and Hugh Collins, who were devisees of real estate, were excluded from the persons who were called legatees. The inference is that, but for the exception, the testator supposed they would be included in the term "legatees." It is not believed that he intended to include his wife among those whom he called "legatees." He was a very old man at the time of his death, passed eighty years, and when he made his will could not have expected to live long, or that his aged wife, also past eighty, would long survive him. He had given to her real estate in fee valued at over $200,000, besides a large amount of personal property, and the income and profits of the four houses on Fifth avenue. He had made liberal provisions for several of her relatives, and it is not probable, if he intended to make further provision for her, that he would have included her with others under the general designation of "legatees." The legatees mentioned in the twenty-fifth clause are clearly the same persons intended to be described by the term legatees in the twenty-fourth clause, and there it is quite clear that the wife was not intended as one of the legatees, because the distribution and payment there directed to be made might be postponed ten years and was probably intended to be postponed until after her death.

There is also a reasonable probability that he did not intend to embrace among the legatees the devisees who took the real estate in remainder, after the termination of the seventeen trusts. In several of the clauses, the wives of the beneficiaries are named as devisees in remainder; in several, the devisees are the issue of the heirs of the beneficiaries, and in several, it is provided that the issue of any one of the deceased heirs of a remainderman shall take the share the

parent would have taken if living. It is not reasonable to suppose that the testator meant to include among the legatees only the wives and issue of life beneficiaries specially named, and not all the remaindermen specially designated, although not specially named, including the unborn issue and heirs of life beneficiaries. If the word "legatees" is to have the broad signification claimed, then it would be impossible during the life of any beneficiary to ascertain who the legatees are, and therefore impossible to uphold the devise in the twenty-fifth clause. If such a construction would not render the clause invalid for any other reason, it would render it so impractical and indefinite that the land could not be divided and distributed under it. It is clear that the word "legatees" used in the twenty-fourth clause was not intended to embrace the unborn issue or heirs of any life beneficiary, because the distribution and payment there directed was to be made at any time within ten years after the death of the testator, and as the same word in the twenty-fifth clause is to have the same meaning, it cannot be held to embrace the unborn heirs of a life beneficiary, and, as before said, unless it can be held to embrace all of the remaindermen, it can embrace none of them. This scheme of division and distribution attributed to the testator by the appellants is so extraordinary, impractical and embarrassing that it should not be taken to embody the testator's intention.

Who, then, was meant by the word "legatees?" We think that it is reasonably probable that the testator meant the life beneficiaries and Parschall. The fact that he excepts Hugh Collins and Ann Davey, who are devisees in fee, shows that Parschall who was a devisee in fee was meant to be included among the legatees. The value of the real estate devised to him is but $1,800, and his proportion, therefore, will be quite small. The life beneficiaries were prominently in the testator's mind, and from their relationship to him or to his wife were the conspicuous objects of his bounty. They were selected as heads of families for whom he meant to provide, giving them the income of the property during life, and then

giving the property in which they had a life interest to their widows, issue and heirs. As the property was thus disposed of after their use of it would be terminated by death, he evidently regarded it as if they were the real and only objects of his benefaction, and the provision for the remaindermen was on their account. This conclusion is fortified by a consideration of the last two paragraphs of the twenty-fifth clause. Did he mean by "the heirs of such legatees as may have died" the heirs of a remote remainderman, who might be wholly unknown to him? He clearly meant the heirs of a legatee known to him and then in his mind. When he said he meant to regard each of his legatees "as a legal heir" of the real estate mentioned, he probably had in mind some definite persons well known, whom he meant to bring into the intimate relation with him and his estate of heirship.

We think these are reasonable views to take of the testator's scheme, and they will render the twenty-fifth clause practical and valid; and we are, therefore, not without some hesitation and difficulty, brought to the conclusion that the court below was right in holding that the eighteen persons named, to wit, the seventeen life beneficiaries and Parschall, were the sole devisees under the twenty-fifth clause of the will.

The next difficulty to be encountered pertains to the method or basis for the division of the real estate between these devisees. It was to be divided in "the proportion in which his, her or their specific legacies hereinbefore named or bequeathed bear to each other." The words, "specific legacies," have reference, evidently, to the specific real estate provided for each of the beneficiaries and their wives, heirs and issue. That is in each case specific. There is no difficulty in ascertaining what proportion each share of the real estate bears to all the real estate devised. The real estate provided for each beneficiary, and after him for his family, is spoken of as his, and it is on the basis of the value of that real estate that his proportion of this real estate is to be ascertained, and that is the way in which it is directed to be divided by the judgment of the court below; and in that

we concur. Any other basis for a division would be impractical, and should not, therefore, be adopted.

It must be conceded that much may be said against any construction which the courts could give to the twenty-fifth clause; but, on the whole, we think that the construction we have thus given has the most reasons to sustain it, and probably accords with the intention of the testator.

We have, therefore, concluded that the order appealed from is right and should be affirmed, without costs to any of the parties.

All concur except ANDREWS. J., not voting.

Order affirmed.