1. WILLS—CONSTRUCTION.
    The general scheme of a will was to equally distribute the estate among testator's children. After making several bequests, the residuary estate was divided among testator's sons. The income of a legacy to one son was to be paid to him during life, and principal, at his death, to be divided between his wife and children, in the same proportion that they would take had it belonged to the son absolutely. A mortgage held by testator against his son was to be deducted "from his share of the residuary estate." The equity in the mortgaged property was in the wife. *Held*, that the mortgage should be foreclosed, instead of taking the amount thereof from the son's share, in which event the children might receive nothing.

2. SAME.
    The amount of the mortgage debt was to be deducted from the principal, and not from the income, the income from the life estate being insufficient to pay the same.

Proceedings on the judicial settlement of the accounts of Abram A. Van Horne, as executor of the will of Abram T. Van Horne, deceased. Decree.

Charles T. Brewer, for executor.
J. D. Reed, for Claribel McRorie, legatee.

ARNOLD, S.    Abram T. Van Horne died on the 9th day of April, 1895, leaving a last will and testament and codicil thereto, which were duly admitted to probate in the surrogate's court of Otsego county. The will bears date the 16th day of May, 1884.    The codicil is dated the 25th day of May, 1888.    At the time of making this will and codicil, the testator had a wife and four children.    The children's names were Abram A. Van Horne, Albert Van Horne, Thomas Van Horne, and Frank R. Van Horne.    The widow and three sons survived the testator.    The son, Albert Van Horne, died after the making of the codicil, and before the testator.    Upon this judicial settlement of the accounts of the executor, contention has arisen as to the meaning of the fourth clause in the codicil, which reads as follows:    "Fourth. It is my will that the mortgage I hold against my son Albert or his wife shall be deducted from his share of the residuary estate."    A proper construction of this clause of the codicil requires a reading of the whole will.    One of the well-settled rules in the matter of construing wills is that the intention of the testator must govern, and that his intention shall be gathered from the whole will.    Tilden v. Green, 130 N. Y. 29, 51, 52, 28 N. E. 880.    In the first clause of his will testator recites that he had theretofore advanced to his son Abram A. Van Horne at least $5,000, and to his son Albert Van Horne and his family at least $5,000; and that, to offset the amount of such advancements, he therefore gave and bequeathed to his son Frank Van Horne the sum of $5,000; and he gave to his executors, in trust for his son Thomas, the sum of $5,000.    Each of these bequests had certain conditions attached.    It is not necessary to consider these conditions, because the contingencies named in said will, relating to these conditions, never obtained.    By his will and codicil, the testator gave to his wife an annuity of $600 a year.    He authorized and directed his executors to retain in their hands, and to invest and reinvest in good interest-bearing securities, a sufficient amount of his estate to raise such annuity.    The bequest was given to his wife in lieu of her dower right in his estate; and he directed that, upon her death, such part of his estate should become a part of the residue, and be disposed of as directed in said will.    By the third clause of his will, he provided as follows:

"Third. All the rest and residue of my estate shall be divided into as many parts as shall represent the number of my sons living at the time of my decease, if they shall be living, and, if not, then as many parts as shall be represented by the number of my sons living and who have died leaving children. And I direct that one of said parts be paid to my son Abram A. Van Horne. if he shall be living at the time of such distribution, and, if not, then to his children, if he leaves children.    One of said parts to my son Frank R. Van Horne, if he shall be living at the time of such distribution, and, if not, to his children, if he shall leave any.    One of said parts to be kept invested.

during the natural life of my son Albert Van Horne, if he be living at the time of such distribution, in good interest-bearing securities by my executors, and the interest collected by them, and the income thereof paid to said Albert Van Horne during his life, and, at his death, the principal paid to his wife and children, and distributed among them, in the same proportion that they would take if said principal had belonged to Albert Van Horne absolutely at the time of his death and he had died intestate, and, if he be not living at the time of such distribution, then the same shall be paid to his wife and children, and distributed among them in the proportion last above stated. One part to be retained by my executors, and kept invested by them in good interest-bearing securities for the benefit of my son Thomas Van Horne, and the interest and the income thereof paid to or for the use of my said son Thomas, if he shall be living at the time of such distribution, in the same manner as the legacy given for his benefit and mentioned in the first clause of this, my will, and the principal to be disposed of at his death or in his lifetime, if he shall recover his health, in the same manner as the principal of said legacy in the like event is therein directed to be disposed of. But, if he shall die leaving a widow or children or both, then his share to go to them, and be distributed among them in the same manner as though it had been his absolutely."

By the fourth clause of his will, the testator charged all legacies upon his real estate in aid of the personal property, and authorized his executors to sell and convey any and all his real estate, and give good and sufficient deeds of conveyance thereof, and directed them to convert all of his estate, both real and personal, into money for the purpose of carrying out the provisions of his will. By the codicil, he first directed that the share given to his son Frank R. Van Horne should be held in trust by testator's executors during the lifetime of said Frank R. Van Horne, and that at his death the same should go to his heirs at law, as though he had held the same absolutely, and had died intestate. By the third clause of the codicil, he directed that the income of the legacy to his son Albert should be paid to him annually for his support and maintenance, and for the support and maintenance of his family. Then follows the fourth clause, which is the subject of dispute upon this accounting.

It appears that, at the time of the execution of the will and of the execution of the codicil, testator was the holder of a bond and mortgage which had been executed by his son Albert and his wife, many years before, to one Sayles; that Sayles had assigned this bond and mortgage to Abram T. Van Horne. At the time of the testator's death, this was the only bond or mortgage held by him against his son Albert or his wife. Albert died after the making of the codicil, and during the lifetime of the testator. Albert left, him surviving, his widow and four children. At the time of the testator's death, there was due on this mortgage the sum of $4,000, principal and interest thereon from April 1, 1883, making the total amount due upward of $7,000. The value of Albert's share in the residuary estate, or of the share passing to his wife and children, does not accurately appear in the account filed, because a considerable amount of the real estate left by the testator has not been sold as directed in the will. So that I am unable to find at this time whether the value of that share exceeds $7,000 or not. The contention of the executor as presented by his counsel is that the full amount of this mortgage should be deducted

from the amount passing, under the conditions existing, to the widow and children of Albert. The contention of counsel for Claribel McRorie is that this mortgage debt is made by the codicil a charge simply upon Albert's share; and that Albert's share was nothing, and could be nothing in any event, but the life use of his share in the residuary estate; and that, owing to the fact that he died before the testator, that estate never came into existence; and that, therefore, this mortgage debt cannot be made a charge upon Albert's share, which now passes to his widow and children. So that the matter for decision here is, what is the meaning of the words "his share"? Did the testator mean merely the personal interest which Albert might have individually under the will and codicil in this share of the testator's estate, or, did he mean, by "his share," the share which would pass to Albert, his wife and children?

It was said in Tilden v. Green, 130 N. Y. 29, pages 51, 52, 28 N. E. 880, 884, that the court "must give such construction to its provisions as will effectuate the general intent of the testator as expressed in the whole instrument. It may transpose words and phrases and read its provisions in an order different from that in which they appear in the instrument, insert or leave out provisions if necessary, but only in aid of the testator's intent and purpose; never to devise a new scheme or to make a new will." Again, the courts have said that, "in construing wills, the court may transpose, reject, and supply words so that it will express the intention of the testator." Starr v. Starr, 132 N. Y. 154–158, 30 N. E. 384; Phillips v. Davies, 92 N. Y. 200–204; Lathrop v. Lathrop (Sup.) 18 N. Y. Supp. 651. And "the intention of the testator, as deducible from the language and provisions of the will, must be carried out." In re Merriman, 91 Hun, 120–126, 36 N. Y. Supp. 131; Bowditch v. Ayrault, 138 N. Y. 222, 34 N. E. 514. "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." Redf. Prac. Sur. Cts. (5th Ed.) 235. "The words of a will are to receive an interpretation which will give to their expression some effect, rather than one which will render any of the expressions inoperative." Id.

As to the meaning and intent of the testator in the use of the words "his share," there exists in my mind considerable doubt; and an able contention can be made to sustain either view, and many authorities can be cited on either side. I have not found, and it cannot be expected that there could be found, authorities directly in point. No two wills are ever exactly alike. The circumstances which surround each testator always vary; and adjudications upon the construction of some particular will, in cases like the one at present under consideration, have little weight, and perhaps none at all, except so far as they illustrate the general laws governing the construction of such instruments.

As was said by the court in Weeks v. Cornwell, 104 N. Y. 325, 10 N. E. 431:

"In the construction of wills, as in the determination of questions of fact and other questions of law, it is not to be expected that absolute certainty can always be attained. Upon questions of fact it is sufficient that there

is a balance of evidence or probabilities in favor of one side or the other of the dispute; and upon such balance courts will rely in deciding the weightiest issues. So, in the construction of written instruments, courts will scrutinize the language used, and, however confused, uncertain, and involved it may be, will give it that construction which has in its favor the balance of reasons and probabilities, and will act upon that. The intent of a testator may sometimes be missed, but such is the inferiority of language and human judgment that such a result is sometimes unavoidable."

Judge Thomas, in his valuable work "Law of Estates Created by Will," at pages 1643 and 1676, furnishes an extended collection of the leading cases upon this important subject. I do not deem that we would be aided by a further consideration of either. We must be guided by the general rules which have become well settled by the numerous adjudications of the courts. From a reading of this will and codicil, it is clearly apparent that the general scheme of the testator was to effect, subject to the annuity given to his wife, an equal distribution of his estate among his children. By the provisions of his will, he sought, in the first instance, to give to his sons Frank and Thomas the same amounts which he had before given to his sons Albert and Abram. After this was accomplished, he directed an equal distribution of the remainder of his estate. Practically, he divided that remainder into four parts. One part he gave to his son Abram, if he should be living at the time of such distribution, and, if not, then to his children, if he left children; one of said parts to his son Frank, if he should be living at the time of such distribution, and, if not, the same to his children; and one of said parts to be kept invested for the benefit of his son Albert during his lifetime, and, at his death, the same to be paid to his wife and children. He also provided that the same should be distributed among them "in the same proportion that they would take if the said principal had belonged to Albert Van Horne absolutely at the time of his death, and he had died intestate"; the remaining part to go to his son Thomas. Thomas died after the testator, and, under the provisions of the will (these provisions are not necessary to be considered now), this part was to revert back to the residuary estate; so that at this time there are three parts to be considered. Under the provisions of this will, there can be no doubt that the general scheme of the testator was as above set forth. By the third clause of the codicil, the testator directed: "I hereby direct, and it is my will, that the income of the legacy to my son Albert shall be paid to him annually for his support and maintenance, and the support and maintenance of his family." Here the word "legacy" referred to Albert's share of the residuary estate. If Albert had survived the testator, all that he could have received would have been the income from this share, which would be, while Thomas lived, one-quarter of the residuum, and, upon Thomas' death, one-third of the residuum. If the mortgage referred to had under these circumstances been charged to what was Albert's share, he would never have received anything under his father's will, because it would have taken more than his lifetime to have paid this mortgage, by applying the income from his share of the residuum for that purpose. I do not think that the testator meant to effect such a result.

From reading the whole will, I think that the testator meant by the words "his share" the one-quarter or one-third which would pass to Albert and his wife and children.　I think, further, in the first instance, this mortgage must be foreclosed.　Under the provisions of the will, the executors are directed to convert all property, real and personal, into money.　Until this is done, I do not see how we can ascertain what the residuum of the estate is.　By charging the share passing to Albert with the payment of this mortgage, I do not think that the testator intended to relieve the land covered by the mortgage from the lien of the mortgage, or that he intended to make Albert's share primarily liable for the payment of the mortgage debt.　If Albert's share is insufficient to pay the mortgage debt, the other parties interested in the will are certainly entitled to insist that the mortgage be foreclosed, and the whole amount due thereon collected; otherwise, their share in the residuum would be reduced.

Some years ago, Anna Van Horne, the wife of Albert, became the owner of the equity of redemption in the mortgaged premises.　She executed a trust deed, in which Abram T. Van Horne was named as trustee, and he accepted the trust; so that, under the existent circumstances, I suppose that the title, subject to this mortgage, may be considered vested in the supreme court, with the power to appoint a trustee.　What may be the ultimate outcome as to the title to that property I cannot tell; but one can very readily see that if this mortgage is paid out of the share passing to Albert's wife and his children, and the real property covered by the mortgage thereby relieved from the mortgage debt, that the children of Albert might never receive anything from the mortgaged property or the proceeds thereof, and they would receive nothing from their share in this estate.

It seems clear to me that the executors should foreclose this mortgage, and that they should convert testator's estate into money or its equivalent, and that there should be no judicial settlement of the accounts of the executor until this has been done.　I have prepared findings in accordance with the views herein expressed, and a decree may be entered according to those views.　Decreed accordingly.