NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1884.

TILBY V. TILBY.

*In the matter of the application for probate of a
paper propounded as the will of* JAMES TILBY,
*deceased.*

Whether a judgment of the Supreme court, dismissing the complaint,
  in an action to annul a marriage, on the ground that the same was in
  all respects legal, is conclusive upon a Surrogate's court, with refer-
  ence to plaintiff's status, as the alleged widow of another, a decedent
  whose will is propounded for probate, *quaere.*
While, ordinarily, a false reason given for a legacy will not, of itself,
  serve to destroy it, the rule is otherwise where any fraud has been
  practised, from which it may be presumed that the provision would
  not have been made if the testator had known of the fraud.
Decedent, by the only dispositive clause of his will, gave all his property
  "unto my (his) wife S., and her heirs and assigns forever." By the
  other clauses, he nominated S. as executrix, authorized her to select
  a burial plot, and provided that only she and himself should be
  buried therein. On a proceeding instituted by S. for probate, it ap-
  peared that, when she entered into the marriage relation with de-
  cedent, she was fully advised of her incapacity to become his wife by
  reason of a prior and existing marriage, and that she wilfully and
  fraudulently kept decedent in ignorance thereof.—*Held,*
1. That the disposition in proponent's favor was vitiated by the fraud
  and imposition practised by her upon decedent ; and
2. It appearing that, but for such fraud and deception, no part of the
  alleged will would have come into existence, the entire instrument
  should be refused probate.
Kennell v. Abbott, 4 *Vesey,* 802 ; Wilkinson v. Joughin, *L. R.,* 2 *Eq.
  Cas.,* 319—followed.

PETITION for the probate of decedent's will, pre-
sented by Sara C. W. Tilby, as widow, legatee and

devisee; opposed by James Tilby and another, decedent's sons.   The facts appear sufficiently in the opinion.

JOHN R. VAN NESS, *for petitioner.*

J. F. MALCOLM, *for contestants.*

THE SURROGATE.—This decedent died in the city of New York on October 24th, 1881, at the age of 72 years. In 1880, he executed the paper whose validity is the subject of controversy.   Its first clause is in the words following:   "I give . . . . . unto *my wife, Sara C. Tilby,* and her heirs and assigns forever, all of my real and personal estate of every name, nature and kind whatsoever and wheresoever situate."

James Tilby and George H. Tilby, sons of decedent by a wife whom he survived, have interposed various objections to the admission of this paper to probate. They attack the regularity of its execution ; they charge that it was obtained from the decedent by the undue influence of its proponent, Sara C. W. Tilby, whom it names as sole beneficiary ; and they protest that said Sara C. W. Tilby, was never, as she is described in the will, the wife of the decedent, but that, from the day when she claims to have intermarried with him until the day of his death, she was at all times incapacitated from becoming his wife, by reason of the fact that she had a husband living.

The ceremony, by which the proponent insists that she was married to this decedent, was performed in May, 1879.   Her matrimonial experience, prior to that time, had been abundant and eventful.   The evidence shows that she once had a husband named Deming ; that,

after his death, she became the wife of one Morse ; that, in 1863, having, as she says, procured a divorce from Morse, she married one Rowe.   From Rowe, also, she claims to have been subsequently divorced.   It is proved that, in October, 1866, upon her petition, a decree was procured against him in an Indiana court, but two months later this decree was, upon his motion, set aside ; and upon his motion, too, in February, 1867, the proceedings were dismissed.

In 1863, while Rowe was still living (as, indeed, for aught that the evidence discloses, he is to-day) she was married to one Albree; from whom she was subsequently divorced in Massachusetts.

In 1874, a marriage ceremony was celebrated at Jersey City, New Jersey, between the proponent and Augustus J. Hayes.

To this long list of husbands was added, in 1879, the name of James Tilby, the decedent.   In 1880, the proponent commenced an action against Hayes, in the Supreme court of this State.   In her complaint, she alleged that it was agreed between herself and him, at the time of their marriage, that their cohabitation should be postponed for two years ; that, before the two years had elapsed (the marriage not having been consummated in the interval), she learned that the person who had officiated at the wedding was not, as he had pretended to be, the minister in charge of St. Paul's Church, and was not a minister at all, as the defendant Hayes was well aware ; that she thereupon notified Hayes of her discoveries, and of her consequent determination never to fulfil the marriage contract ; that to this determination she had faithfully adhered ; that, in

view of the fact that she had been advised by counsel that grave questions might arise as to the validity of this "pretended marriage" to Hayes, and as the solution of her doubts had become specially important by reason of her having become the wife of James Tilby, she was desirous of obtaining a judicial determination of her rights in the premises.    She accordingly prayed the court that the "pretended marriage" might be declared void and of no effect.

The objectors in the present proceeding for probate were permitted, upon their own application after the death of their father, to intervene in the Supreme court action.   .The issues there raised were submitted to a referee, whose report, filed in November last, is here in evidence.    That report finds, among other things, that, in October, 1874, this proponent was married to Augustus J. Hayes ; that the marriage was followed by cohabitation ; that it was in all respects legal, and that, accordingly, the complaint must be dismissed.  Judgment was entered accordingly.

If, as the contestants claim, the matters by that judgment determined are *res adjudicata* in this proceeding (and such would seem to be the case), I am bound to hold, upon the faith of it, that the proponent was never the wife of James Tilby.   I should unquestionably so determine upon all the evidence before me, even if that Supreme court judgment had never been entered.   I am satisfied that, in October, 1874, and at all times thereafter, the proponent was incapable of contracting marriage with James Tilby, and that, while she was fully advised of her incapacity, she wilfully and fraudulently kept him in ignorance of it.

Upon the facts above stated, the question presents itself : Is this will rendered invalid by the fraud and imposition practised upon its maker by its proponent ?

The decision of the Master of the Rolls in Kennell v. Abbott (*4 Ves., 802*) is directly to the purpose. These were the facts in that case : One Edward Lovell married Catharine Hickman, concealing from her the fact that he had been previously married to a woman who was still his lawful wife. By a will, in which she described herself as the wife of Edward Lovell, Catharine gave this pretended husband a legacy. In passing upon the validity of that bequest, the court referred approvingly to a doctrine of the civil law, quoting a passage from the Digest, to the effect that, while ordinarily a false reason given for a legacy will not, of itself, serve to destroy it, it is otherwise, if any fraud has been practised, from which it may be presumed that the testator would not have given the legacy if that fraud had been known to him. "That, from a book of great authority," says the learned court, "seems to be the principle of the civil law. The question is whether, according to the law of England, that can apply to a case like the present, and whether the law will permit a man, who obtains a legacy in such a manner, to have the benefit of it. I have not been able to find anything that bears any very decisive analogy to this, but, upon general principles, I am of the opinion that it would be a violation of every rule that ought to prevail, as to the intention of the deceased person, if I should permit a man, availing himself of the character of husband of the testatrix, and to whom in that character a legacy is given, to take any part of the estate of the person whom he has so

grossly abused, and who must be taken to have acted upon the duty imposed on her in that relative character." After distinguishing the case then at bar from other cases which might be deemed analogous, but in which, as he declares, a different rule is applicable, the court adds : "This is a legacy to a supposed husband, and under that name. He was the husband of another person. He had certainly done this lady the grossest injury a man can do to a woman, and I am called upon now to determine whether the law of England will permit this legacy to be claimed by him. Under these circumstances, I am warranted to make a precedent, and to determine that, wherever a legacy is given to a person under a particular character, which he has falsely assumed, and which alone can be supposed the motive of the bounty, the law will not permit him to avail himself of it, and therefore he cannot demand his legacy.

Mr. Vesey, in his note to the case just cited, after stating the doctrine upon which it is founded, adds : "This luminous and well reasoned judgment of the Master of the Rolls is the chief illustration of the principle."

In his treatise on Legacies (*chap. 2, sec. 18*), Roper, commenting upon the foregoing decision and another somewhat analogous, says : "The mistakes under which the testators labored originated in their being grossly deceived and imposed upon. The description and character of the legatees were of the essence of the bequests, and it was a reasonable presumption that they would not have been given if the testators had known the real situations of the legatees."

Kennell v. Abbott (*supra*) was decided in 1799. In

1836, Giles v. Giles (*1 Keen, 685*) came before the Court of Chancery. In that case, Giles, the testator, gave a legacy to a woman whom the will described as his wife. She was not in fact such, being, at the time of her marriage to the testator, the lawful wife of one Penfold. Upon the authority of Kennell v. Abbott, it was claimed that this legacy was void, but the court said: "It is clear that, in point of law, the mere misdescription of a legatee will not defeat the legacy, and it is equally clear that a legacy, given to a person in a character which the legatee does not fill, and by the fraudulent assumption of which character the testator has been deceived, will not take effect. That was the principle upon which the case of Kennell v. Abbott was decided, and the soundness of that decision has never been questioned. . . . But, in the present case, the testator, as well as Mrs. Penfold" (the legatee) "had actual knowledge of the existence of John Penfold in the year 1815, and it was not more the duty of Mrs. Penfold than it was the duty of James Giles, the testator, to ascertain that John Penfold was dead before they ventured to proceed to the ceremony of a marriage between themselves. There is no more reason why I should impute to the plaintiff a fraud upon the testator than to the testator a fraud upon the plaintiff. Which of them was guilty, if either of them, must depend upon circumstances which are not before the court. If both had a guilty knowledge, no fraud was committed upon the testator, and however immoral the conduct of the parties, it is no part of the duty of courts of equity to punish parties for immoral conduct by depriving them of their civil rights.

In a later case (Rishton v. Cobb, *5 Mylne and Craig, 145*—1839) the Lord Chancellor reasserted the doctrine of Kennell v. Abbott (*supra*), though he held that the facts there appearing did not show the existence of such fraud or deception as to invalidate the legacy.

In 1848, the case of Doe v. Rouse was decided (*5 Com. Bench, 422*). The testator took to wife, in 1834, one Mary, who survived him. In 1840, a marriage was solemnized between himself and one Caroline, who thereafter resided with him as his wife until the time of his death. By his will, he gave certain property to his " dear wife Caroline." The legacy was sustained. Said MAULE, J.: "The testator devises the premises in question to his ' dear wife Caroline.'   .   .   .   .   .   . There is no competition with anyone else of the same name, to whom it can be suggested that the will intended to refer.   .   .   .   .   .   . Here is a person fitly named, and there can be no reasonable doubt that she was the person intended. It being conceded that it was the testator's intention that Caroline should have the property, and he having mentioned her by an apt description, I see no ground for holding that, because the words ' my dear wife ' are not strictly applicable to her, the intention of the testator should fail, and the property go to some one to whom he did not mean to give it."

In these views, the rest of the court concurred. Of course, no question of fraud was involved in the case, for the marriage between the testator and his legatee was invalid, not by reason of the legatee's prior marriage and consequent incapacity, but by the prior marriage of the testator himself. Such was the case also

in Lepine v. Bean (*L. R.*, *10 Eq. Cas.*, *160*), and in Gelston v. Shields (*78 N. Y.*, *275*). It was otherwise, however, in the case *In re* Petts (*27 Beav.*, *576*—1859). There a legatee under a testator's will had married one Farmer in 1832. In 1836 she had left her husband, and had never seen him up to 1855, when she was married to the testator. By his will, the testator gave her a legacy whose validity was the matter in litigation. The Master of the Rolls said: "I am of opinion that the evidence before me does not show anything which amounts to fraud on the part of the legatee. The inquiries (referring to certain inquiries about Farmer, made about the time of the woman's second marriage) may have been loose, and not very carefully prosecuted either by the testator or the claimant. She says that she did hear a report that Farmer was living, but that she did not believe it. She had left her husband nineteen years. He had made no attempt to recover her, and, having heard nothing of him, she married again. *After that lapse of time*, I do not think that the ceremony of marriage with another person can of itself be considered as so fraudulent an act as to deprive her of this legacy.

In 1866, the precise question here under consideration was passed upon by the Vice-Chancellor, in Wilkinson v. Joughin (*L. R.*, *2 Eq. Cas.*, *319*). A legacy was given by a testator to a woman whom he described as his wife, but who, at the time he married her, and at the time of his death, had a lawful husband living. It was declared that, because of this fraud on the woman's part, her legacy was void.

I have made diligent but fruitless search for Amer-

ican decisions directly apposite to the present inquiry. In the absence of any adverse authority, I must apply the principle established in Kennell v. Abbott and so recently reasserted in Wilkinson v. Joughin.

As a result, I must pronounce against the probate of this will.

It is true that the only direct and immediate consequence of the application of that principle is the invalidation of the first clause of the instrument in dispute. That clause is the only one which makes dispositive provisions, and by that clause Sara C. W. Tilby is made sole legatee and devisee of the decedent's estate; one of the three remaining clauses nominates her as executrix; another authorizes her to select a burial place for the decedent's remains; and the third expresses the wish that the remains of no member of his family except the executrix shall lie in the same burial plot with his own.   And that is all.

It seems to me that, without any real enlargement of its scope, the doctrine of the cases above cited is broad enough to cover this entire will.   It is evident that, but for the fraud and deception which invalidate its first clause, no portion of it would ever have come into existence.

Besides, in view of the facts upon which I have already commented, and of other disclosures of the evidence, I hold that this disputed paper is the product of such influence as the law pronounces undue, and that for that cause also, it must be denied probate.

A decree may be entered accordingly.