### In re ROCKWELL'S WILL.

(*Supreme Court, General Term, Fifth Department.* October 19, 1888.)

WILLS—FRAUD AND UNDUE INFLUENCE—FORMER MARRIAGE—EVIDENCE.

Testatrix was about 60 years of age, when she made a will giving all her property · to her husband, to whom she had been married about a year before. It was contended that he had contracted this marriage for the purpose of getting the property, and that a woman whom he had procured to live with him and testratrix as servant girl and to take charge of the house was in fact his wife, and was aiding him in this scheme. After the death of testatrix this woman disappeared, and none of the witnesses had ever since seen or heard of her. The husband did not testify, and there was no direct evidence of his marriage to this woman, but it was shown that they had elsewhere lived together as man and wife, he representing her to be his wife,. and that, on his arrest for defrauding the hotel where they had been stopping, and . where she was employed, an acquittal was directed. Several witnesses testified that on that trial he swore that she was his wife; but the judge who presided at it· did not remember his so swearing, though he conceded that that would be a ground of¯ acquittal, and there appeared to be no other ground. He had been a witness on another trial, and been thoroughly cross-examined as to his having lived with this woman, etc.; and two witnesses who were present at that time did not remember¯ that he swore he was married to her. *Held*, that the evidence to show that at the time of his marriage to testatrix he already had a wife living, and that this was such. a fraud as to vitiate the will, was sufficient to authorize an issue to the jury.

Appeal from surrogate's court, Erie county.

Application to probate the will of Elizabeth A. S. Rockwell, deceased, contested by John J. P. Read, the brother of decedent, who appeals from the decree admitting it to probate.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.. *Green & Marcy*, for appellant. *Moses Shire*, for proponent.

HAIGHT, J. Elizabeth A. S. Rockwell, the deceased, died in the city of·' Buffalo in the month of January, 1887. At the time of her decease she was· from ·60 to 65 years of age. On the 24th day of June, 1885, she was married.

to George W. Rockwell, and on the 12th day of June, 1886, she executed the paper in question, in and by which she gave and devised all of her estate, real, personal, and mixed, to her husband and his heirs forever. Thereafter, and on the 19th day of July, 1886, in consideration of one dollar, she executed and delivered nine quitclaim deeds of real estate owned by her in the city of Buffalo to George. C. Rockwell, the son, by a former wife, of George W. Rockwell, who thereupon executed and delivered deeds of the same property to his father, the proponent. The admitting of the will to probate was contested by John J. P. Read, her only brother and next of kin, upon the ground that the paper propounded as a will was not executed by her; that it was not published as required by law; that at the time of the execution thereof she was not of sound mind or memory; and that the execution thereof was procured by fraud, duress, and undue influence on the part of the proponent. At the conclusion of the hearing the surrogate found as facts that the instrument propounded for probate as and for the last will and testament of Elizabeth A. S. Rockwell is genuine and valid; that the testatrix, at the time of the execution thereof, was in all respects competent to make the same, and was not under restraint or undue influence; and, as conclusions of law, that the instrument should be admitted to probate, etc. Exceptions were taken to these findings, which present the only question which we are called upon to review.

It appears from the evidence taken before the surrogate that prior to the marriage of the deceased she lived with her brother, John, in an old house upon Genesee street, in the city of Buffalo, for many years, and ever since the death of their parents; that they lived in squalor, were filthy and ragged, and that she went about the streets and markets picking up rotten and cast-away fruits and vegetables; that for several years she had been a thin, spare woman, in feeble health, but when engaged in making a bargain she was keen and shrewd, and would stand and banter for a long time over prices. She was understood to have been a maiden woman until her marriage with Rockwell, but is described as being love-sick, or silly with love, when talking of the men. There is evidence tending to show that some years ago she fell in love with one Crawford, and gave him money in large sums, and that he finally went away, taking $18,000 of her money with him. She had accumulated quite a fortune, and it is said that at the time of her decease she had about $60,000. Such appears to have been her history down to the time of her marriage with Rockwell. The first we hear of Rockwell he was residing in Bradford, Pa. It appears that he had a former wife, who died in 1880, by whom he had a son and daughter. In Bradford he was living with a woman called Anna Dempsey, in rooms rented from the proprietor of the Butterfield House, which were run in connection with that hotel; that when he went there he registered his name with the words "and wife" attached. He introduced her as his wife, and treated her as such during the time that they lived at the hotel. After living there for a while he engaged her for service in the hotel, and his board or meal tickets were charged up to her account for services, and paid in that way. After living there for some months they left, and the proprietor of the hotel subsequently caused their arrest under the statute prohibiting guests from defrauding hotels. Upon the trial of that action the court directed an acquittal, and directed the district attorney to prepare an indictment against him for adultery. Thereupon he left the state and is next heard of in Buffalo as a witness upon the trial of an action before Referee Welch; and subsequently he and his son took the deceased to Niagara Falls, where he was married to her in the presence of his son, and then returned to the city of Buffalo, where they went to living together,—first in a house known as the "Sidway Flats," and afterwards in one of the houses of the deceased, upon Whitney place. It does not appear whether they ever cohabited together. Rockwell on one occasion stated that they did not, and the deceased stated to one of her lady friends that they did not sleep together.

After they commenced to reside on Whitney place her health was quite poor, and he procured a servant girl, who came and took charge of the house, and remained until after her death. The servant girl procured by him was the same Anna Dempsey with whom he had lived as his wife at the Butterfield House in Pennsylvania. After the decease of Mrs. Rockwell, Anna Dempsey, so called, disappeared, and none of the neighbors or witnesses sworn upon the trial have heard anything from her since, or knew of her whereabouts. There is evidence tending to show that Rockwell married the deceased for her property; that John, her brother, was a drunkard; that he went with John to saloons, and gave him whisky, and took it to his house in bottles; that he made declarations that neither would live until spring, and that he was going to get the property of both; that he had her make a will in his favor, and so on. Other evidence tends to show that after the marriage he was very kind to her; had her get new clothes, dress up, and occasionally took her out riding. Yet afterwards, when she was sick, she complained that she had to take medicine that he brought her from his doctor, was afraid of him, and complained of the girl whom he kept in the kitchen as being a cat and a spy set there to watch over her.

The serious and only question which we shall discuss pertains to the charge of fraud and undue influence. It is claimed that Anna Dempsey, so called, was his wife; that he had contracted the marriage with the deceased for the purpose of getting her property; and that Anna Dempsey, as Rockwell's wife, was aiding him in that scheme. There is no direct evidence of a ceremonial marriage. The question as to whether or not he was married to Anna Dempsey rests upon presumptions arising from their living and cohabiting together as man and wife, his declarations, representations, and testimony. It appears that at the time they lived together as man and wife at Bradford he introduced her to numerous persons as his wife, and represented her to be such. Several witnesses testify that on the trial of the action for defrauding the hotel he testified in that action that she was his wife, and the claim is made that the judge directed an acquittal upon that ground. And again, on the trial of the action before Referee Welch, several witnesses again testify that he swore upon that trial that he was married to her. To rebut this the testimony of Judge WILLIAMS was taken, who presided at the trial in Pennsylvania; and he states that he is unable to recollect that he did so swear, but concedes that he directed an acquittal, and that if he had so sworn it would have been a ground for directing an acquittal, for the reason that his wife, being a servant in the hotel, occupying a room therein, they could not be treated as guests within the provisions of the statute. And it does not appear that there was any other ground for directing an acquittal. In reference to the trial before Referee Welch, Mr. Box, one of the attorneys in that case, was called as a witness, and testified that he did not recollect of Rockwell's swearing that he was married to Anna Dempsey; and yet he states that he was surprised by Mr. Rockwell's testimony given upon that trial; that he gave him a thorough cross-examination, going into his past life and history, including the fact of his living with Anna Dempsey, their arrest, etc., for the purpose of discrediting his testimony. The testimony of Judge WILLIAMS and Mr. Box can hardly be regarded as raising a conflict upon the subject, for neither professes to have any clear or distinct recollection as to whether Rockwell did or did not so testify. The only other witness who was called on rebuttal that heard him testify before Referee Welch was Sherman E. Bunnell. He was invited by Mr. Rockwell to attend the trial, and says that he went there and listened as a spectator; that he became interested in the trial; that he heard Mr. Rockwell sworn, but did not hear him swear that he was married. It is possible that this evidence would raise a conflict, but whether it does or not it does not satisfy us. Mr. Rockwell does not deny that he lived with Anna Dempsey as his wife in Bradford; that he introduced and represented her to be such. He does not deny

that she left Bradford with him, or that he took her to live in the house on Whitney place, and that she continued to live there under the guise of a servant girl until after the decease of the testatrix.    He did not, take the stand to deny that he testified that she was his wife upon the trial before Judge WILLIAMS or before Referee Welch.    He did not produce Anna Dempsey in court as a witness, or testify that he did not know of her whereabouts.    We think a *prima facie* case of marriage to her was made out, and that the burden of showing that they were not married was cast upon him, and that he has failed to produce satisfactory evidence showing that they were not married.    If he had a former wife living at the time of his marriage to the deceased, and she was induced to marry him and make a will in his favor under the supposition that he was a single man, and had the right to become her husband, it was such a fraud as would vitiate the will.    *Tilby* v. *Tilby*, 2 Dem. Sur. 514.    For these reasons the decree should be reversed, and the issues ordered to be tried before a jury at the Erie circuit: *First.* Was Elizabeth A. S. Rockwell, at the time of the execution of the instrument in question, of sound and disposing mind and memory, and were the contents thereof made known to her? *Second.* Was the same procured to be executed by fraud, circumvention, undue influence, and deceit practiced upon her by George W. Rockwell, or by any other person acting under his direction?    The costs of this appeal should abide the final award of costs.    So ordered.

BARKER, P. J., and BRADLEY and DWIGHT, JJ., concurred.