[Civil No. 3332. Filed May 26, 1933.]

[22 Pac. (2d) 405.]

THE FEDERAL LAND BANK OF BERKELEY, a Corporation, Appellant, v. COUNTY OF YUMA, of the State of Arizona, a Body Corporate and Politic, and D. H. INMAN, County Treasurer and *Ex-officio* Tax Collector of the County of Yuma, State of Arizona, Appellees.

46

Messrs. Phillips, Holzworth & Phillips (Mr. Richard W. Young, of Counsel), for Appellant.

Mr. Glenn Copple and Mr. A. J. Eddy, for Appellees.

ROSS, C. J.—The question involved in this case is the validity of a tax laid upon eighty acres of farming land, located in Yuma county, for the year 1930.

The appellant, the Federal Land Bank of Berkeley, having a mortgage on said tract of land brought an action against the mortgagors to foreclose the mortgage and made S. W. Ellery, superintendent of banks and *ex-officio* receiver for the Farmers' Commercial State Bank, successor in interest to the mortgagors; the county of Yuma; and D. H. Inman, county treasurer and *ex-officio* tax collector of said county, defendants contending that the assessment and tax lien against the land were illegal and void and therefore inferior to its mortgage lien.

The trial court held the tax against the land was legal and superior to appellant's mortgage lien.

The mortgagee bank has appealed. Its contention is that this tract of land was the property of the Farmers' Commercial State Bank and that under sections 3069–3072 of the Revised Code of 1928 the only legal method by which it could be assessed was upon the shares of stock of the shareholders of said bank; that under said sections the capital or assets of the bank were not taxable and that such method of taxation of a solvent bank continued after it became insolvent and was taken over by the superintendent of banks for purposes of liquidation.

It is unquestionably true that as long as the Farmers' Commercial State Bank was a going concern, and actively engaged in the banking business, the method prescribed in sections 3069–3072, *supra,* was exclusive. The tax thereunder is against the shares of stock and not against the capital or assets of the bank. The obligation or duty of the bank to assist the tax authorities in the collection of the taxes is imposed, but the tax itself remains a charge against the stock of the shareholder. *Western Investment Banking Co.* v. *Murray,* 6 Ariz. 215, 56 Pac. 728; *Ward County* v. *Baird,* 55 N. D. 670, 215 N. W. 163; *Andrew, Superintendent of Banks,* v. *Munn,* 205 Iowa 723, 218 N. W. 526; *Hewitt* v. *Traders' Bank,* 18

Wash. 326, 51 Pac. 468; *Walcott* v. *McCarroll*, 88
Okl. 279, 213 Pac. 296. These cases were decided
upon statutes providing for the taxation of banks
similar to our statutes, and they all hold that the tax
is upon the shares of stock of the shareholders and
not upon the capital stock of the bank.

The law requires that all property be assessed at
its full cash value. Section 3068, Rev. Code. In
ascertaining this value when the taxpayer is a bank,
the assessing authority may take into consideration
the bank's surplus, reserve fund, undivided profits,
par and market value of the shares of stock, together
with any other trustworthy information. This method
of ascertaining the value of a bank's property is un-
objectionable when it is a going concern. The aggre-
gate value of the shareholders' stock represents the
value of the bank's capital or assets. However, this
method cannot possibly be used when the bank be-
comes insolvent, for the shareholders' interest in its
assets is the last to be considered. The assets are
taken from the bank and given over to the receiver
to be applied upon the bank's obligations to its credi-
tors and depositors, and if anything is left it goes
to the shareholders. The value of their stock is at
best only nominal and in no way represents the full
cash value of the insolvent's assets. These may be,
and generally are, of considerable value and can be
ascertained only by the rules applicable to property
in general.

When a bank is closed because of its inability to
meet its obligations, when it has not assets sufficient
to take care of its creditors and depositors and for
that reason is taken over by the superintendent of
banks for liquidation, it may nominally remain a bank
but it is not "engaged in the business of using money
wherewith to make money for the owners of its
shares" (section 3069, *supra*), and therefore is no

longer taxable as a bank. While a bank is a going concern, it is the owner of all its property, of whatever nature or kind. When it becomes insolvent and is taken over by the superintendent of banks, its property and business immediately vest exclusively and unconditionally in the superintendent of banks and his successors in office, subject to any liens theretofore attaching. Section 246, Rev. Code. In other words, the legal title to the property of the bank is cast upon the superintendent of banks and any transmission of title must pass through him; subject, of course, to the orders and directions of the court.

Section 3075, Revised Code, provides that every person owning or having charge of or under his control property in this state subject to taxation shall make out and deliver to the assessor, between the first Monday in January and the twentieth day of May in each year, a correct list of said property. And section 3074 provides that the property "of a person whose assets are in the hands of receiver" shall be listed "by such receiver" for taxation. Subdivision 3, section 3040, provides that "the word 'person' includes a corporation, company, partnership or association, or society as well as a natural person."

Here is a clear and distinct mandate to the receiver to list the property of an insolvent, and this mandate applies to receivers of banking corporations or associations as well as to all other corporations, or associations, or individuals.

Under statutes very similar to ours (Laws Wash. 1893, chap. 124, secs. 8 and 15, at pp. 327, 328) and in a situation the same as here, in *Hewitt* v. *Traders' Bank, supra,* it was held by the Supreme Court of the state of Washington that the property of a bank, after it had gone into the hands of a receiver, should be listed by such receiver for taxation. The court there further said:

"Taxes are an enforced contribution upon persons and property levied by authority of the state for the support of the government. . . . The claim of the government for the payment of taxes upon the citizen is paramount to all other claims and liens against his property."

See, also, *In re Mallery, Collector,* 50 Hun 601, 2 N. Y. Supp. 437.

The Constitution of this state, section 2, article 9, provides that all property in the state not exempt shall be subject to taxation to be ascertained as provided by law. See, also, § 3066, Rev. Code.

The land in question is not exempt under any provision of law, and if it escapes taxation it is only because the legislature has overlooked, in providing for the state's revenues, property in its peculiar status. We do not think the legislature has made this mistake. The statutes clearly provide for the listing and assessing of property in the hands of a receiver for the purposes of taxation. This means all receivers; it makes no exceptions.

The only defect in the laying of this tax is that it was not assessed to the superintendent of banks as *ex-officio* receiver but to the bank itself. We think, however, this defect is only an irregularity and, as said in *Western Investment Banking Co.* v. *Murray, supra,* "will not warrant the equitable interference of the court. It has been repeatedly held that where the objection is to the mere mode of taxation, and does not go to the justness of the tax itself, equity will afford no relief."

At all events, there is no insistence by the appellant on this point.

We are satisfied that the judgment of the trial court was correct, and accordingly affirm it.

McALISTER, J., and FICKETT, Superior Judge, concur.

NOTE.—On account of the illness of Judge LOCK-WOOD, Honorable FRED W. FICKETT, Judge of the Superior Court of Pima County, was called to sit in this case.