SHOLL *vs.* SHOLL.

A testator, by his will, after giving to several persons legacies of $100 each, bequeathed to his brother J. the amount of a certain bond and mortgage, and of two promissory notes, given by J. to the testator. He then gave to J. H. C., S. B. and C. P. legacies of $100 each, and to J. C. a legacy of $300. The testator then made "the above legacies," excepting that portion devised to his brother J., a lien upon his real estate; which said real estate he directed his executors to sell, and from the proceeds thereof to pay "said legacies." And in case of a surplus from the sale, after paying all claims thereon, and the legacies, then he directed that "all the legacies before mentioned" should be proportionably increased, and in case of a deficiency, that then and in that case "the said legacies" should be proportionably diminished. *Held*, that by the words "all the legacies before mentioned" the testator meant all the legacies before mentioned as being liens upon, and as being entitled to be paid out of the avails of, the real estate devoted by the will to that purpose.

*Held* also, that so far as the testator's brother J. was concerned, the testator merely meant to forgive the debt owing by him; and that it was not the intention of the will that he should share any part of the proceeds of the sale of the real estate.

THIS was an appeal, by John Sholl, from a decree of the surrogate of the county of Herkimer. The petition of appeal alleged that Christian Sholl, late of the town of Danube, Herkimer county, made and executed in due form of law, his last will and testament, on the 4th of February, 1845, and died soon afterwards, leaving the same in force. That the will was duly proved and recorded in the office of the surrogate, as a will of real and personal property, and the executors named therein were duly qualified as such, and took upon themselves

the trust and duty of executing such will. That in April, 1848; the executors accounted, before the surrogate, in regard to their administration as executors, and that upon that accounting the sum of $1623,98 was found to be in their hands; to be distributed among the legatees named in the will, of whom the appellant was one; and that sum was accordingly paid to the surrogate by them, to be distributed among the legatees according to law. That the appellant thereupon presented to the surrogate the will of the testator, and requested that in making a distribution of such surplus fund, the surrogate should set apart and distribute to him such proportion thereof as justly belonged to him, as one of the legatees; he claiming that his share exceeded $500. But that the surrogate refused to distribute any part of the fund to him, but made a decree distributing such surplus as follows: To Joseph Sholl, Jacob Sholl, Nancy Getman, Delia Dillenback, Catharine Smith, Lany Smith, John H. Cook, Sarah Beekly and Catharine Putnam, $135,33 each; and to Jacob Cook $405,99. The appellant, by his petition, prayed that the decree of the surrogate might be reviewed by this court, and that it might be reversed, modified or amended. No evidence was introduced on the hearing before the surrogate, except the will of the testator. The persons above named as distributees of the surplus fund were made parties, respondents, and they put in an answer to the petition of appeal; insisting that the decree of the surrogate was right. Annexed to their answer was a copy of the will, which was as follows:

"First, I give and bequeath unto my brother Joseph Sholl the sum of one hundred dollars. Item: I give and bequeath to my brother Jacob Sholl, the sum of one hundred dollars. Item: I give and bequeath unto my sister Nancy Getman, widow, the like sum of one hundred dollars. Item: I give and bequeath unto Delia, wife of Peter Dillenback, the sum of one hundred dollars. Item: I give and bequeath unto my sister Lany, wife of Abraham Smith, the like sum of one hundred dollars. Item: I give and bequeath unto my brother John Sholl, the amount of a certain bond and mortgage which was executed by him and wife, to me, on the

first day of April, in the year one thousand eight hundred and thirty-six, for six hundred and fifty-six dollars; also the interest on the same. Also, I give to my brother John, the amount, together with the interest, of two notes I hold against him, the one for fifty dollars, dated September fifth, eighteen hundred and forty-three, the other for one hundred and ten dollars and nineteen cents, dated January twenty-second, eighteen hundred and forty-five. Item: I give and bequeath to my nephew, John H. Cook, the sum of one hundred dollars. Item: I give and bequeath to my nephew, Jacob Cook, the sum of three hundred dollars. Item: I give and bequeath unto my niece, Sarah, wife of Dr. Beekly, the sum of one hundred dollars. Item: I give and bequeath unto my grand-niece, Catharine Putanm, the sum of one hundred dollars. And I hereby make the above legacies, excepting that portion devised to my brother John, a lien upon my freehold estate, situate in the town of Danube, county of Herkimer aforesaid, on which I now reside; which said real estate I hereby order and direct my executors, in case my decease takes place before the first day of April, eighteen hundred and forty-seven—then within six months after said first day of April, to advertise and sell at public sale, to the highest bidder, and from the proceeds thereof within one year to pay said legacies; and in case I should survive, that then in that case, within six months I order such sale as aforesaid, and the legacies to be paid in like manner; and in case there should be a surplus from said sale, after paying all claims thereon, and the legacies, then I direct that all the legacies before mentioned, shall be proportionably increased; and if there is not sufficient to discharge the claims and legacies, then in that case the said legacies shall be proportionably diminished."

*L. Ford*, for the appellant. I. The legacy given by the will to John Sholl was a *pecuniary*, and not a *specific* legacy. (*Rider* v. *Wager*, 2 *P. Wms. Rep.* 330, *and note. Walton* v. *Walton*, 7 *John. Ch. Rep.* 258. *Toller's Law of Executors*, 300 *to* 302.) II. By a fair construction of the language of the will, when taken altogether, it is manifest that it was

Sholl v. Sholl.

the intention of the testator that John Sholl should participate in the distribution of the surplus, if any such surplus remained.

*H. Denio*, for the respondents.    I.   John Sholl, the appellant, is not, by the true construction of Christian Sholl's will, entitled in any event to share in the proceeds of the sale of the testator's real estate.    (1.) The legacy to John Sholl is *specific*, and not general or pecuniary.   The amount of the mortgage and notes is specified in order to designate or describe the *things*, and not as a measure of quantity.   (*Preston on Legacies*, 52, 53, 60, 61.   *Lord Hardwick, in Heath* v. *Perry*, 3 *Atk.* 142, 143.    *Walton* v. *Walton*, 7 *John. Ch. Rep.* 258, 263, 264.) (2.) The testator, by excepting the bequest to the appellant from the operation of the clause making the legacies a lien upon his real estate, indicated a clear intention of excluding him from all participation in the proceeds of that estate.   (*Harris* v. *Fly*, 7 *Paige*, 421, 425.)   (3.) The language of the clause in the will, directing all the legacies to be "proportionably increased" in case there should be a surplus from the proceeds of the real estate, does not by a fair construction embrace the bequest to the appellant.   The terms "all the legacies before mentioned" should be construed with reference to the general scope of the clause, which is to subject the real estate to the legacies, in exclusion of the appellant.   The construction contended for by the appellant's counsel is founded on a minute verbal criticism, which should never be allowed to prevail against the general scope and probable intention of the testator.   The sentence relied upon by the appellant should be read as though it was written "all the legacies before mentioned, *as being a lien on the said freehold estate.*"   The word "*all*" refers to the word "*proportionably*," and should be read "*each*," to express the testator's meaning more definitely.   It is certain that the same legacies which were to be "proportionably increased" in case of a surplus, were to be "proportionably diminished" in case of a deficiency; but there is no indication that the appellant was in any event to pay any part of his debt to the testator.   The general scheme of the will is to for-

give the appellant the large debt which he owed the testator, and to divide the real estate among his other relatives in certain proportions. If the grammatical construction does favor the claim of the appellant, still that does not control the obvious or probable intention. (*Areson* v. *Areson*, 5 *Hill*, 410.) The provision for the appellant was not properly a "legacy;" or if so, legally speaking, it was not in common parlance. The testator called it a "portion." (4.) The great disproportion which the appellant's legacy—if the gift of the debt can be called a legacy—bears to the bequest to his relatives in the same degree, is a circumstance bearing strongly against the construction contended for by the appellant. II. There is no evidence of what the testator's "freehold estate in Danube" sold for, or that the surplus paid into court arose out of that sale. It may have been in whole or in part the produce of the personal property, in which the appellant has no interest.

*By the Court*, GRIDLEY, J.   We are satisfied that the surrogate came to a right conclusion in rejecting the claim of the appellant to any share in the surplus of the proceeds of the real estate, devoted by the testator to the payment of the legacies bequeathed by him to the respondents. We will very briefly specify some of the grounds on which this opinion rests.

1. The legacies of the respondents were made a lien on the real estate in question. The testator directed the estate to be sold, and that those legacies should be paid out of its proceeds: while the legacy of the appellant was not only not made a lien on the land, but was excluded by a special exception. By the will, therefore, the land was a fund devoted to the payment of the legacies in question, to the exclusion of that bequeathed to the appellant. The testator foresaw that there might be a surplus; and also, that there might possibly be a deficiency. And he therefore provides that, in the event of a surplus, "all the legacies before mentioned" shall be proportionably increased; and in the event of a deficiency, that "the said legacies" shall be proportionably diminished. The question now arises, what legacies the testator intended to embrace in the words "all the

---

Sholl *v.* Sholl.

---

legacies before mentioned?" And it seems to us that the answer is very clear. He obviously meant all the legacies before mentioned, as being liens upon, and as entitled to be paid out of the avails of, the real estate, devoted by the will to this purpose. It is to be borne in mind, that the same legacies which the will authorizes to be increased, are by the same instrument directed to be diminished, should there be a deficiency in the fund. Now, it is easy to see why such a pro rata rule of deduction should be applied to those legacies which are to be paid out of the fund : but no reason can be assigned why an independent legacy, wholly unconnected with the fund, should be affected either by a deficiency or a surplus.

2. Again, it should not be overlooked, that the testator does not denominate the bequest to the appellant, a " legacy," but a " portion :" and therefore the expression " all the legacies before mentioned," cannot properly be referred to what he denominates a " portion," as its legitimate antecedent.

3. We do not regard the bequest to the appellant as a legacy, which the testator ever intended his executors to pay. And hence there was no provision in the will for its payment, either out of the proceeds of the real estate, or any other fund. The intent of the testator was to forgive the appellant the debt which was due from him. We are aware that the leaning of the courts has been in favor of construing legacies to be pecuniary, instead of specific, in order to prevent the failure of the bequest : and some cases where this rule has been enforced almost in defiance of the testator's intention, are cited by Ch. Kent, in *Walton* v. *Walton*, (7 *John. Ch. Rep.* 283.) In these cases, however, the court regard the testator as merely designating the fund out of which he desired his executors to pay the legacy, a hypothesis utterly inconsistent with the facts of this case, and which alone would be sufficient to exclude this legacy. None of the cases, however, have come up to this. On the contrary, two cases are cited on page 264, which would assign this legacy to the class of specific bequests : One from 4 *Vesey*, 555, where the testator bequeathed " 8000 pounds," the amount of a banker's note, and the other from 9 *Vesey*, 360, where the

Sholl *v.* Sholl.

legacy consisted of "the sum or sums of money, which the executors receive on a note of 400 pounds." If, however, it were true that the form of words employed by the testator in this case, were such as had been held in other cases to be descriptive of a pecuniary legacy, still, such a construction would be in direct hostility to the entire context of this will. For it may well be asked, why should the testator desire his executors to pay the appellant just the amount of the principal and interest of the mortgage and note due from the appellant to him? Did he intend to collect these securities himself, or that his executors should collect them, and then pay back to the debtor, in the form of a pecuniary legacy, the exact amount of the debt and interest? Did he, in the language of the authorities, mention the mortgage and note as a fund to be collected by his executors, out of which, when collected, the legacy should be paid by them? It seems to us that an intention so absurd should not be imputed to the testator. Again, the appellant might obtain a bankrupt's or insolvent's discharge, and thus extinguish the debt due to the testator. In such an event, did the testator intend his executors to pay the amount of the debt as a legacy, notwithstanding the debt itself should be discharged? We think not. Yet such would be the consequence of holding this to be a pecuniary legacy. On the whole, we are of the opinion, that the testator merely meant to forgive the appellant's debt—and that it was not the intention of the will that he should share any part of the proceeds of the real estate in question.

The decree must be affirmed, and the proceedings remitted to the surrogate, &c. with such costs as the code prescribes.