JOHN GELSTON et al., Executors, etc., Respondents, *v.*
  WILLIAM B. SHIELDS et al., Appellants, CATHARINE
  SHIELDS et al., Respondents.

The will of S. gave to his "beloved wife Catharine" his dwelling-house
  during her widowhood; if sold with her consent, the proceeds to be
  invested by the executors, the income to be applied to her use during
  widowhood, and upon her death or remarriage, the principal to be
  divided among his "then surviving children." Various other provisions
  were made for the benefit of his said wife, who was appointed guardian
  of the testator's infant children. The will also directed the executors to
  set apart out of the residue of the estate several sums of $5,000, accord-
  ing to the number of the testator's children surviving him, to be held in
  trust for the benefit of each child, and the residue of the estate was
  given in equal shares to his children, the issue of any child dying before
  the testator to take the parent's portion. The testator was married to
  Catharine in 1848; lived with her from that time up to his death, treat-
  ing her as his lawful wife, and had by her eight children, who were
  living at the time of his death; five of them were at that time minors.
  After his death an action was brought by Jane, who claimed to have
  been married to S. in 1833, to recover dower. Catharine and her chil-
  dren were made parties. Jane recovered judgment. She had two chil-
  dren who survived S. In an action for a construction of the will, *held*,
  that the word "children" in the will referred to the children of Catharine,
  and that the children of Jane were not entitled to share in the estate.

(Argued September 17, 1879; decided September 30, 1879.)

APPEAL from a judgment of the General Term of the
Supreme Court, in the second judicial department, affirming
a judgment entered upon a decision of the court on trial at
Special Term. (Reported below, 16 Hun, 143.)

This action was brought to obtain a judicial construction
of the will of Henry Shields, late of the city of New York,
deceased.

The following provisions of the will are those in question:

"Second. I give my beloved wife, Catharine Shields, the
dwelling-house now belonging to me known as No. 106 (one
hundred and six) Second avenue, in the city of New York,
that she now occupies. To have and to hold the same unto

my said wife during her widowhood, and if said dwelling-house and lot on which it stands should be sold by my executors with her consent in writing, the proceeds thereof shall be held and invested by my executors, and the income thereof applied to her use during her widowhood, and upon her death or remarriage, I devise the same in equal share to my then surviving children, and the then surviving issue of any who shall have died in fee simple as tenants in common, the issue of any deceased child to take the share its parent would have taken if surviving. If I shall dispose of said dwelling-house before my death, then, in lieu thereof, I give to my wife the income of a principal sum equal to that at which I shall have so disposed of, the same to be enjoyed during her widowhood, the principal to be held and invested by my executors for this purpose.

" Third. I give and devise to my executors in trust the sum of thirty thousand dollars ($30,000), or such property of equal value as they shall for this purpose select from the real or personal estate I may own at my death, to be held and invested by them, and the income, rents or profits thereof shall be applied by them to the use of my dear wife during her widowhood, and upon and after her death or remarriage, the capital shall be dealt with and divided as part and parcel of my residuary estate.

" The provisions contained in this will for the benefit of my wife are in lieu of all dower or thirds in my real estate.

" Fourth. I give all my household furniture, provisions, printed books, wearing apparel, and silver and plated ware, to my dear wife, to be hers forever.

" Sixth. I direct that my executors shall set apart out of the residue of my estate, real or personal, or both, excluding that hereinbefore mentioned, several sums of five thousand ($5,000) dollars, or property in their judgment of equivalent value, according to the number of my children surviving me, which sums or property of equal value shall be in trust by my executors, and set apart one for the benefit of each one of my children surviving me in the manner following : My

said executors shall hold in trust and invest a separate sum of $5,000 or its equivalent in property, real or personal, and apply the income of each separate sum or value to the use of each one of my children as to the share to be set apart for each son during his life, until he shall attain the age of twenty-five years, at which age, if he shall so long survive, or at my death, if he shall have previously attained that age, the principal shall be paid or transferred to him, and if he shall die before attaining twenty-five, the capital shall be paid to his children surviving, if any ; and as to the share to be set apart for each daughter during her life, and upon her death, the capital shall be paid over or transferred to her children who shall survive her, if any.

"And in the event that any one of my sons shall die before attaining the age of twenty-five years, and without issue surviving him, or if any daughter shall die without issue surviving her, the said principal shall fall into my residuary estate, and be disposed of as such.

" Seventh. As to all the rest, residue and remainder of my estate, both real and personal, not hereinbefore well and sufficiently disposed of, I give and devise the same in equal shares to my children who shall survive me, to be their's forever, the issue of any child who shall die before me to take the same share its parents would have taken if surviving me.

" Eighth. I appoint my said wife the guardian of the persons of my infant children during their respective minorities.

" And I direct that the judgment and decision of my executors, as to the valuation of any parts, or parcels of my estate, real or personal, for the purpose of setting the same apart for the benefit of my wife or children, or any of them, shall be final and conclusive in each and every case.

" Eleventh. I appoint my dear wife executrix, and my friends, Henry W. Smith, John Gelston, and my brother-in-law, Thomas Dougherty, of the city of New York, executors of this, my will."

The testator died in 1877 ; he was married to defendant, Catharine Shields, in November, 1848, and had by her eight

children, four sons and four daughters, all of whom were living at his decease, and five of them were minors.

After the testator's death a claim was made by one Jane Shields, or Jane Valentine; that she was the widow of said Henry Shields; a demand for dower was made by her in the real estate of the testator, and an action was commenced by her for the recovery of such dower against all the parties to this action, and a judgment was obtained by her in May, 1876, for a sale of testator's real estate, and for the payment to her of a gross sum of money in lieu of her dower in said real estate. An order was entered in said action for the compromise and settlement of the judgment, and the same was afterwards settled, and the judgment satisfied of record. Said Jane had two children, one born in 1840, the other born in 1848, who are defendants herein. They brought actions against the executors and executrix to compel a recognition of their claims to share in the estate as children of the deceased.

*J. J. Perry*, for appellants. In all wills and devises the words "heirs" and "children" mean legitimate heirs and children only and to authorize a contrary construction the intention of the testator must be clear, unequivocal and positive, and the devisees must be specifically stated. (*Gardner* v. *Hyer*, 2 Paige, 11; *Beachcroft* v. *Beachcroft*, 1 Mad. Ch. R.) Parol evidence is not admissible to show that by the word "children" it was the testator's intention to include illegitimate children, if there are legitimate children living or who may be born. (*Collins* v. *Hoxie*, 9 Paige, 88; *Cartwright* v. *Vaudrey*, 5 Ves., 530.)

*Homer A. Nelson*, for respondents. The intention of the testator, if not inconsistent with the rules of law, must govern in construing the will, and this must be ascertained from the whole will. (*Bradhurst* v. *Bradhurst*, 1 Paige, 343; *Covenhoven* v. *Shuler*, 2 id., 130; *Rathbone* v. *Dykeman*, 3 id., 26; *Howe* v. *Van Schaick*, 3 Barb. Ch., 506; *Roome* v. *Phillips*,

24 N. Y., 463; 4 Hun, 363; *Van Nostrand* v. *Moore*, 52 N. Y., 21; *St. Luke's Home* v. *Assn. for Indigent Females*, id.; *Lefever* v. *Lefever*, 59 id., 440; *Holmes* v. *Mead*, 52 id., 322.) It is not material to the validity of a legacy that the legatee should be definitely ascertained and known at the date of the will or of the death of the testator. It is sufficient if he is so described that he can be ascertained and known when the right to the legacy accrues. (*Gardiner* v. *Heyer*, 2 Paige, 11; 1 Jarm. on Wills, 330; 1 Redf. on Wills, 691, § 42, pl. 40; id., 665, pl. 49.)

MILLER, J. The intention of the testator in the devises made to his children and for their benefit may, we think, be determined from the interpretation to be placed upon the terms of the will itself. A distinct recognition is made by the testator in his will of the fact that Catharine Shields was his lawful wife, and provision is made for her as well as the children of the deceased. In the second clause of the will he gives to "my beloved wife, Catharine Shields, the dwelling-house now belonging to me"  *   *   *   "to have and to hold the same unto my said wife during her widowhood," and if the house is sold with her consent, he directs that the proceeds be invested and the "income thereof be applied to her use during her widowhood," and upon her death or remarriage, he devises the same in equal shares "to my then surviving children." He also declares that in case he shall dispose of the same before his death, "I give to my wife the income of a principal sum equal to that at which I shall have so disposed of the same, to be enjoyed during her widowhood." Again, in the third clause, he creates a trust, and directs that the income, rents, or profits thereof shall be applied "to the use of my dear wife during her widowhood, and upon and after her death or remarriage," the capital to be divided as directed. In the same clause he declares that "the provisions contained in this will for the benefit of my wife are in lieu of all dower or thirds in my real estate." In the fourth clause he devises "to my dear wife" certain

articles of personal property. In the eighth clause he appoints "my said wife the guardian of my infant children;" and in the eleventh appoints her one of his executors. The reference made in the various provisions cited to his wife evinces beyond controversy that the testator considered that Catharine Shields was his wife, that he had no other wife but her; and no question is made that any other person existed, so far as the will is concerned, who had any claims upon him as a wife. Catharine Shields being thus recognized and declared to be the wife of the testator, must be so regarded for the purposes of the will, and no one else could claim any such position under the same.

It is also quite clear that the children which are spoken of in the same will are and were the children of the testator and Catharine Shields. It is evident that these only were referred to, and none others have any rights whatever in that connection. It would be inconsistent with the whole object and tenor of the will, to hold that the testator intended to include children of another female, who was not named and whom he did not recognize as his wife. If such had been the design, it is fair to assume that he would have made provision to that effect, in terms which would have shown his intention in this respect beyond any question.

The appointment of Catharine as guardian of his infant children is very significant upon the question arising as to his intention, and utterly inconsistent with the idea that he recognized the children of Jane as his lawful children. It would be entirely contrary to any reasonable presumption, to hold that he designed to make Catharine, whom he recognized as his wife, the guardian of a minor child of Jane, whom he had not named in the will and whom he had not recognized as his own offspring. This fact of itself is almost decisive, and taken in connection with the other plain indications in the will as to his intention, is conclusive upon the question considered.

Giving full effect to the judgment obtained by Jane Shields in the action brought to recover her dower, and

assuming that it established that she was the lawful wife of the testator, it is nevertheless apparent that he did not recognize her as such wife, from the time of his marriage with Catharine; that he lived with Catharine from that period until his death, treating her as his lawful wife and the children of Catharine and himself as his only lawful children. The will was evidently made in view of the facts referred to, entirely ignoring the children of Jane and without any recognition of them as children of the testator.

The sixth clause of the will of the testator which directs the executors, without naming the executrix, to divide the estate into sums which are named according to the number of the children surviving him, and that the same shall be held for the benefit of each child, is not inconsistent with the other provisions, and bears no indication that the testator intended to include the children of Jane. The omission of his wife as an executrix may be accounted for, by assuming that the testator supposed the executors were better qualified to perform this duty imposed. But even if it were otherwise, any inference that it was assignable to a different motive is overborne by the various provisions of the will to which we have adverted, all tending in the same direction and having reference to his wife Catharine and necessarily, as is apparent, to the children she had borne as the wife of the testator. The views expressed dispose of the case, without considering the other questions raised, which are, so far as material, fully discussed in the opinion of the General Term by GILBERT, J.

The judgment should be affirmed

All concur.

Judgment affirmed.