In the Matter of the Judicial Settlement of the Accounts of Patience C. Logan et al., Executors, etc.

L. died leaving his wife, a son of a deceased brother and five sisters surviving him. By his will he gave a legacy to his wife and legacies of $8,000 to his nephew and to each of four of the sisters. He gave to his executors the same sum in trust to pay the income thereof to C., the other sister, for life and upon her death to her two daughters, adding these words "to whom I hereby give and bequeath the same." By the residuary clause the testator directed his executors to sell all his residuary real estate and with the proceeds pay the legacies so given, and in case any sum remained after such payments, the executors were directed "to pay over and divide such remaining sum to and among the legatees mentioned * * *, share and share alike." After payment of the legacies out of the proceeds of sales of the residuary real estate a surplus remained in the hands of the executors. *Held,* that the residue should

be divided into seven equal parts, one to be taken and held by the executors, as trustees upon the same trusts as prescribed for the benefit of C. and her daughters; that the testator by the words "legatees mentioned" had reference to the persons to whom the immediate title to the legacies given were vested, which title as to the legacy given in trust vested, not in C. or her daughters, but in the executors jointly or as one person. Reported below, 62 Hun, 238.

(Argued March 1, 1892; decided March 15, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 17, 1891, which modified a decree of the surrogate of the county of Kings, which settled the account of the executors of the will of William J. Logan, deceased, and ordered the distribution of certain moneys.

The facts, so far as material, are stated in the opinion.

*William D. Veder* and *Edward Winslow Paige* for appellants. The words of the residuary clause are of clear, plain and simple import, without any ambiguity whatever. They are " to pay over and divide such remaining sum to and among the legatees mentioned in this my will, to whom I hereby give and bequeath the same, share and share alike." (*Freeman* v. *Coit*, 96 N. Y. 63; *Van Nostrand* v. *Moore*, 52 id. 12.) Nor would inference or argument from other parts of the will, if permissible, vary the meaning. (2 Jarman on Wills, 841, § 12; Redf. Law & Pr. [4th ed.] 225, 226.)

*Daniel G. Rollins* for respondents. The Clanny trust fund must be regarded as a single legacy either to Mrs. Clanny absolutely or to the trustees of the trust for herself and two of her children. ( *Weeks* v. *Cornwell*, 104 N. Y. 325; *Newcombe* v. *Williams*, 9 Metc. 533.)

MAYNARD, J. The testator had no descendants and the principal objects of his bounty were his wife, the son of a deceased brother and five sisters. He gave to his wife some articles of personal property; ten thousand dollars in money,

and two lots in Brooklyn, as her absolute property and in lieu of dower. He gave to his nephew eight thousand dollars, and a like sum to each of four of the sisters. He made provision for the family of the remaining sister, Mrs. Jane Clanny, in the fifth clause of the will, in which he gave to his executors the sum of eight thousand dollars, to have and to hold the same in trust to and for the uses and purposes therein declared; which were to invest the same and keep it invested upon first bond and mortgage upon improved real estate in the cities of New York and Brooklyn and collect and receive the income therefrom and pay it over to this sister semi-annually during her life-time and upon her death to pay over and divide such sum of eight thousand dollars with the unexpended income thereof to her two daughters to whom he says he thereby gives and bequeaths the same. He then directed that the several legacies theretofore given should not be a charge upon the real estate devised to his wife, but should be paid and satisfied out of his personal estate and out of the proceeds arising from the sales of his other real estate, as afterwards provided in the will. He also gave to Mrs. Clanny, for herself and children, the use of his burial plot in Greenwood Cemetery, where the remains of his father and mother are interred. He directed his executors to expend a sum, not exceeding $1,000, for the purchase and improvement of the half of a burial plot in the same cemetery, in which the remains of himself and wife are to be interred. Then follows the residuary clause, over the construction of which this controversy has its origin; in which he directs his executors to sell all his real estate, not specifically devised and, to quote the precise language used, "with the proceeds arising from such sales to pay and discharge in full the several legacies herein before given and bequeathed. After the payment and satisfaction of the aforesaid legacies, should there be any of such proceeds remaining, then and in such case, I direct my said executors to pay over and divide such remaining sum to and among the legatees mentioned in this my will to whom I hereby give and bequeath the same, share and share alike."

It appeared upon the final settlement of the accounts of the executors before the surrogate of Kings county, that the net residuum of the sales of the real estate, after paying all the general legacies in full and the expenses of administering the estate and commissions, amounted to the sum of $11,302.69; and the question arose as to its proper division and distribution. The executors insisted that it should be divided into seven equal parts, and that they were entitled to take, hold and dispose of one of such parts in their trust capacity and upon the same trusts as are prescribed in the fifth clause of the will. Mrs. Clanny and her daughters, upon the other hand, claimed that the fund should be divided into nine equal shares and that they should each have one of such shares, making the aggregate amount received by them three times that allotted to the widow or any one of the other collateral branches of the testator's family. The surrogate adopted this view and decreed accordingly. Upon an appeal by the executors, the General Term made an order modifying the decree so as to divide the fund into seven equal shares and directing one of such shares to be paid to Mrs. Clanny. Her daughters now seek to secure a reversal of this order.

We are constrained to differ with both the surrogate and the Supreme Court, and to hold that while this residuum should be divided into seven equal parts, one of such parts should not be paid to Mrs. Clanny, but should be given to the executors and be held by them upon the same trusts as the legacy of $8,000, which they are required to hold for the benefit of herself and her daughters. In a strict legal sense, the executors are the legatees to whom the moneys disposed of by the fifth clause are given. Under our statutes the entire estate in the property bequeathed is vested in them for the time being for the purposes of the trust. They take jointly or as one person, and not in severalty. Mrs. Clanny takes no part of the principal of the estate given; nothing but the income; and the gift to her daughters is not to take effect until after her death. It is reasonable to assume that when the testator, in the thirteenth clause, speaks of "the legatees mentioned in

this my will," he had reference to the persons in whom the immediate title to the legacies given were vested by its previous provisions.

It is undoubtedly true, as the counsel for the appellants argue, that where the meaning of the testator is apparent from the language used, the plain import of the language cannot be departed from, and that words in a will are generally to be deemed to have been used in their ordinary and natural sense; but there is another canon of testamentary construction, equally well recognized, that when words are descriptive of a class of beneficiaries, their scope and application may depend in a large degree upon the apparent scheme of the will and the signification in which they, or kindred words, are used in it elsewhere. They may be enlarged or restricted as may best comport with the evident intention and purpose of the testator.

There are many apt illustrations of the application of this rule. In *Cromer* v. *Pinckney* (3 Barb. Ch. 466) and *Brower* v. *Bowers* (1 Abb. Ct. App. Dec. 214), it was held that the words "nephews and nieces" should be construed to mean not only grandnephews and nieces, but even a great-grandniece.

In *Bowne* v. *Underhill* (6 T. & C. 344), the term "children" was made to include grandchildren; in *Prowitt* v. *Rodman* (37 N. Y. 42), it was declared that it may include issue however remote, and will include such issue whenever the reason of the thing demands it; in *Low* v. *Harmony* (72 N. Y. 408), the term was in one clause of the will held to exclude grandchildren, and in another clause to include them; and in *Gelston* v. *Shields* (78 N. Y. 275), the word was limited to children of the testator by his reputed wife, and was held not to include his children by his lawful wife. So the word "heirs" has been limited to children (*Scott* v. *Guernsey*, 48 N. Y. 106), and the heirs of a particular person to the heirs of his body (*Kiah* v. *Grenier*, 1 T. &. C. 388). In *Weeks* v. *Cornwell* (104 N. Y. 325), this court held that the term "legatees" meant the devisees of the real estate who had only a life interest therein, and excluded the remaindermen; and in *Sholl* v. *Sholl* (5 Barb. 312), the words "all the legacies before

mentioned " in the will were held to mean the legacies which were chargeable upon the real estate, and no others.

Many similar cases might be cited, but these are enough. It is unnecessary to allude to the special circumstances which controlled the decision in each case.   They were always of such a character as to afford rational grounds for the conclusion that the words construed were used in the enlarged or the restricted sense attributed to them.

The effect to be given to testamentary language cannot depend upon conjecture, much less upon judicial caprice.   It must stand upon some sound principle of interpretation, and in the present case we ought to give to the terms employed an application which will preserve the harmony of the scheme plainly outlined in the will.   The first thing which impresses us upon reading that instrument is the absolute impartiality of the favors shown by the testator to the different collateral branches of his family in disposing of the bulk of his estate. Each branch is given, through its chosen representative, exactly the same sum.   It is not to be inferred that the testator intended to break up this equality of distribution in disposing of the residuary estate.   For some undisclosed reason he selected his executors as the recipients, in the first instance, of the legacy given for the benefit of Mrs. Clanny and her daughters, and it is probable that the same reason would have been equally potent in determining the direction which the share of the residuary fund intended for her family should take.   It is not likely that he would have given to them, unprotected by any trust, a sum which, if the appellant's contention is upheld, would amount to nearly one-half of the legacy in trust.

It is also to be observed that the main object of the conversion of the real estate into money is to provide the funds for the payment and discharge in full of the several legacies given in the previous provisions of the will, one of which is the legacy to the executors, and when in the same clause he directs that if, after the satisfaction of such legacies, there should be any residue, it should be equally divided between

the legatees mentioned in the will, he evidently had in mind the same persons to whom the general legacies were to be paid, who in the fifth clause, as we have seen, are the executors as trustees and not the beneficiaries of the trust.

The order appealed from should be modified so that the part therein directed to be given to Jane Clanny be paid to the executors, to be held and disposed of by them upon the same trusts as the legacy in the fifth clause of the will, and, as so modified, the order should be affirmed, with the costs of both parties upon this appeal to be paid out of the residuary ·estate.

All concur.

Judgment accordingly.