H. L. CRAWFORD et al.

v.

THE MOUND GROVE CEMETERY ASSOCIATION et al.

*Opinion filed December 20, 1905.*

1. WILLS—*when trustees are the "legatees" in whom title to shares of residue vests.* Trustees vested by the will with legal title to the trust fund during the period of the trust are "legatees," in whom will vest the legal title to whatever share of the residue the trust fund is entitled to under a clause of the will providing that the undisposed of property of the testatrix shall be sold and the proceeds "paid to the legatees hereinbefore named," in proportion to the legacies specifically mentioned.

2. SAME—*when lapsed legacy does not fall into residue.* A lapsed legacy does not fall into the residue where the residue is given by the will to the same persons to whom the testator has given specific legacies, but in such case it becomes intestate property, the same as a lapsed devise of real estate, and goes to the heirs-at-law.

3. SAME—*"legatees" may include societies and corporations.* Where a will provides that the undisposed of property of the testatrix shall be sold and the money "be distributed and paid to the legatees hereinbefore named," the fact that certain of the legatees are societies and corporations does not exclude them from sharing in such residue.

4. SAME—*when a gift will not be held void for uncertainty.* A gift to a charitable institution of a sufficient sum of money to produce an annuity of $50 per annum will not be held void for uncertainty, but as such gift is not a specific legacy the donee is not entitled to share in the residue to go to the "legatees hereinbefore named, * * * to each in proportion to the legacies *specifically* fixed and mentioned."

APPEAL from the Circuit Court of Kankakee county; the Hon. DORRANCE DIBELL, Judge, presiding.

This was a bill filed to construe the will of Helen L. Huling, who died testate leaving an estate of the value of about $230,000 in personal property and a homestead at Kankakee, Illinois, of the value of about $8000. By the second clause of her will she gave to H. L. Crawford and H. M. Stone $40,000 in trust, the income of which was to

be paid to her nephew, Harry Lee Knight, during his life, and on his death the principal was to be paid to his three children, Gertrude L. Knight, Carolyn Knight and Camden Knight,—Carolyn Knight and Camden Knight being minors. To her niece, Emma Knight Crawford, she gave $25,-000 absolutely by the third clause. By the fourth clause she gave to her trustees, Crawford and Stone, $30,000 for the use of her grand-nephew, George B. Knight, the income of which was to be paid to him until he should arrive at the age of thirty years, when, if living, the principal was to be paid to him, and in the event of his death the sum of $30,000 was to be paid to the other legatees mentioned in the will, except Cornelia Stone, Genevieve Parker and May Parker, in proportion to their legacies. By the fifth clause she gave to her grand-nieces and nephew, Helen Norton Carter, Mabel West Knight and Solon DeWitt Knight, the sum of $5000 each, provided they should arrive at the age of twenty-two years, and if any of them should not arrive at that age, then his or her legacy of $5000 was to be divided equally among the other legatees, except as to Cornelia Stone, Genevieve Parker and May Parker. By the sixth clause she gave to the Mound Grove Cemetery Association the sum of $5000. By the seventh clause she gave to the Emergency Hospital a sufficient sum of money to produce $50 per annum. By the eighth clause she gave to Harry L. Crawford the sum of $25,000 absolutely. The ninth and tenth clauses gave to Cornelia Stone, Genevieve Parker and May Parker $1000 each, absolutely. The eleventh clause of the will reads as follows:

"*Eleventh*—I give, bequeath and devise to the Helen Huling Home, an association to be organized and incorporated under the laws of the State of Illinois, that real property known as the George V. Huling homestead, and situated at the north-west corner of Station street and Indiana avenue, in the city of Kankakee, county of Kankakee, State of Illinois, and I do give and bequeath to the said Helen Huling

Home the amount of $25,000, to be held and managed and invested by the board of directors or the trustees of the said Helen Huling Home as an endowment, the income of which shall be used by said home and appropriated for the maintenance thereof, under said association."

The twelfth clause of the will reads as follows:

"*Twelfth*—It is my will that any property of my estate, real or personal, of whatever kind and whatever the same may be, which is not hereinbefore otherwise specifically mentioned and disposed of, be converted into money, and such money shall be distributed and paid to the legatees hereinbefore named, other than the said Cornelia Stone, Genevieve Parker and May Parker, to each in proportion to the legacies hereinbefore specifically fixed and mentioned."

The thirteenth clause gave to the Saint Paul's Episcopal Church $5000. The fourteenth clause merely appointed executors.

It will be observed that the cash legacies to be paid are as follows:

| | |
|---|---:|
| To trustees' fund, for use of Harry Lee Knight | $40,000 |
| To trustees' fund, for use of George B. Knight | 30,000 |
| To Emma Knight Crawford | 25,000 |
| To Helen Huling Home | 25,000 |
| To Harry L. Crawford | 25,000 |
| To Emergency Hospital, estimated | 2,500 |
| To Saint Paul's Church | 5,000 |
| To Mound Grove Cemetery Association | 5,000 |
| To Helen Norton Carter | 5,000 |
| To Mabel West Knight | 5,000 |
| To Solon DeWitt Knight | 5,000 |
| To Cornelia Stone | 1,000 |
| To Genevieve Parker | 1,000 |
| To May Parker | 1,000 |

Making a total of.........................$175,500

Besides the above legacies was the George V. Huling homestead, valued at about $8000. After the payment of these cash legacies and expenses there would remain about $45,000 or $50,000, which would go to the residuum fund.

218—26

By a decree of the court the eleventh clause of the will was held void for uncertainty,—that is to say, the clause of the will giving $25,000 to the Helen Huling Home. Under the construction placed by the court upon the will, this $25,000 passed to the residuum to be paid to the legatees mentioned in the will in proportion to the legacies specifically fixed and mentioned, and the real estate, consisting of the Huling homestead, of the value of about $8000, was held to be intestate, and divided as intestate estate among the heirs-at-law of Helen L. Huling, deceased. It is conceded by all the parties interested that the eleventh clause of the will was void for uncertainty.

The court further found in its decree that the homestead passed as intestate estate to Emma Knight Crawford, Harry L. Crawford, George B. Knight, Helen Norton Carter, Mabel West Knight and Solon DeWitt Knight as tenants in common, and that each was entitled to one-sixth part thereof; that the bequest mentioned in the seventh clause of the will should be paid to the Sisters of the Sacred Heart of Mary; that the sum of $5000 mentioned in the thirteenth clause of said will should be paid to the Saint Paul's Church, Kankakee, Ill.; that the executors of said will, as trustees, should set apart and hold a sum sufficient to produce an annuity of $50, which said annuity of $50 should be paid to the Sisters of the Sacred Heart of Mary, as mentioned in the seventh clause of said will, to be used for the purposes as set forth therein; and further, that there should be paid by the ex-ecutors to the Mound Grove Cemetery Association the sum of $5000 in trust for the purposes mentioned in the sixth clause of said will; further, that said executors, as trustees, should hold and set apart $15,000 to be paid to Helen Norton Carter, Mabel West Knight and Solon DeWitt Knight in equal parts, to be paid as they should arrive at the age of twenty-two years, respectively; also found that in the event either of them should die before arriving at said age of twenty-two years, the said sum of $15,000, or such part

thereof as should become lapsed by the death of the taker thereof, should become payable to the legatees, Harry Lee Knight, Emma Knight Crawford, Harry L. Crawford, George B. Knight, and the survivor or survivors of Helen Norton Carter, Mabel West Knight and Solon DeWitt Knight, in equal parts thereof, as his or her own property, and provided that if there should be any income arising from said sum of $15,000 during the time said sum was so held in trust by said trustees, or any part thereof, such income should become a part of the residuum. The court further provided in the decree that said executors, as trustees, should set apart out of the funds of said estate the sum of $40,000 to be held in trust, the income of which should be paid to Harry Lee Knight during his lifetime, and after his death the said principal sum should be payable to Gertrude L. Knight, Carolyn Knight and Camden Knight, to each one-third part thereof; that the share of the residuum assignable to said sum of $40,000 should be added to the said sum of $40,000 and held in trust, the net income thereof to be paid to Harry Lee Knight, as aforesaid, and upon his death to be paid to his children, each a one-third part thereof. The court further decreed that the executors, as trustees, should take and set apart the sum of $30,000 in trust, to be held by said trustees, the income to be paid to George B. Knight until he arrived at the age of thirty years, at which time said sum of $30,000 should be paid to him, and that the share of the residuum assignable to said sum of $30,000 should be added to said sum and held in trust and the net income thereof paid to said George B. Knight; that in the event of the death of the said George B. Knight prior to his arriving at the age of thirty years, the said sum of $30,000, and the share in the residuum assignable thereto, should be divided among the legatees mentioned in said will other than the Mound Grove Cemetery Association of Kankakee City, Saint Paul's Church of Kankakee, Ill., the Sisters of the Sacred Heart of Mary, Cornelia Stone, Genevieve Parker and

May Parker. The court found that the legatees should share in the residuum under the twelfth clause in said will in the following proportions: Harry Lee Knight, 40-135; Emma Knight Crawford, 25-135; George B. Knight, 30-135; Helen Norton Carter, 5-135; Mabel West Knight, 5-135; Solon DeWitt Knight, 5-135; Harry L. Crawford, 25-135; and directed that Harry L. Crawford and H. M. Stone, trustees, carry out the provisions of said will according to the decree.

This appeal is prosecuted from that decree by the executors and trustees to review the decree, who assign as error the holding in the decree giving the residuum following the $40,000 in trust to Harry Lee Knight during his life, and contending that the residuum following said $40,000 should be paid to his three children in equal one-third parts thereof. Cross-errors are assigned by Harry Lee Knight and Gertrude Knight,—first, that the court below erred in holding that the real estate mentioned in the said will descended to the heirs-at-law, and that the same was intestate estate; second, that the court erred in holding that Harry L. Crawford and Emma Knight Crawford participated in the residuum; third, that the court erred in not holding the seventh clause of the will void; and fourth, that the court erred in finding that the share of the residuum following the $40,000 was held in trust, contending that the same should have been paid to Harry Lee Knight absolutely, without any conditions or restrictions, and that the court erred in decreeing any part of said residuum should be held in trust by the said trustees. Cross-errors are also assigned by George B. Knight, a minor, by W. R. Hunter, his guardian *ad litem,* which relate to the share of the residuum which is held to go to the trustees for his benefit, and raise practically the same questions as raised by Harry Lee Knight as above set forth. Cross-errors are assigned by the Sisters of the Sacred Heart of Mary, alleging that the court erred in finding and decreeing that the said Sisters of the Sacred Heart of Mary, being a legatee in

the will, did not participate in the residuum under clauses 5 and 12 of said will. Other cross-errors are assigned by Mabel West Knight and Solon DeWitt Knight, minor defendants, *pro se,* and also by Helen Norton Stockdale, (formerly Helen Norton Carter,) as to the disposition of the fund of $25,000 mentioned in the eleventh clause of the will, their insistence being that the $25,000 did not go into the residuum but passed as intestate estate. The Mound Grove Cemetery Association assigns error also upon the refusal of the court to allow it to participate in the residuum under clauses 6 and 12 of the will. Separate briefs are filed by each of those assigning cross-errors, each giving his version as to the construction that should be placed upon the will.

H. K. & H. H. WHEELER, for appellants.

W. J. BROCK, and C. F. WHITMORE, Jr., for appellee the Mound Grove Cemetery Association; W. R. HUNTER, for Harry Lee Knight, Gertrude L. Knight and George B. Knight; A. L. GRANGER, guardian *ad litem* for Carolyn Knight and Camden Knight; C. B. SAWYER, guardian *ad litem* for Mabel West Knight and Solon DeWitt Knight; THOMAS S. SAWYER & SON, for Helen Norton Stockdale; GRANGER & GRANGER, for the Sisters of the Sacred Heart of Mary.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellants assign but a single error, and that is as to the disposition of that part of the residuum which follows the $40,000 legacy to the benefit of Harry Lee Knight. They insist that the share of the residuum that follows that legacy goes direct to the children of Harry Lee Knight, and not to themselves as trustees, to be held in trust with the main legacy and upon the same conditions. Harry Lee Knight and his adult daughter assign errors, and insist that the part of the residuum which appellants claim goes to the children of Harry Lee Knight, goes absolutely to Harry Lee Knight,

and not to his children or his trustees.  George B. Knight assigns error, and insists that the part of the residuum that follows the $30,000 legacy that was given in trust for his use and benefit goes directly to him, and not to his trustees to be held in trust, as the principal fund is directed to be held. All these parties urge that it was the clear intent of the testatrix to establish but two trust funds,—one for Harry Lee Knight and one for George B. Knight,—and that after the principal of these funds was provided, she made, and intended to make, an absolute and direct disposition of all the remainder of her property.  Appellants further urge that as the income only was to be given to Harry Lee Knight and the *corpus* or the principal fund was to go to his children, and as it was the intention of the testatrix to absolutely dispose of her property other than the two funds to be held in trust, the residuum that followed the legacy to Harry Lee Knight should naturally and properly follow the *corpus* of that fund and go to his children.  Harry Lee Knight urges that as there is nothing in the residuary clause that refers to a trust, and as it is the policy of the law to so construe a will as to vest the property in the first donee, the court will not hold that it should be taken in trust unless it clearly appears that such was the intention of the testatrix, and then cites the language of the residuary clause, which directs that the residue be converted into money and paid to the same legatees, and points out that in the fourth clause of the will the testatrix clearly recognized Harry Lee Knight as a legatee, as she there directs that the fund that is to be held in trust for George B. Knight is to be held by the trustees, and they are charged with "like duties as to the trusts created relative to the legacy of the above named Harry Lee Knight;" that the language so used is a clear recognition of Harry Lee Knight as a legatee, and it is asked if his children are legatees, why is he not a legatee?—and if he and his children are alike legatees how will the fund be divided between them?

We think a single consideration will dispose of all the questions raised by the respective parties touching so much of the residuum as follows the legacies for the benefit and use of Harry Lee Knight and George B. Knight. Harry Lee Knight was to take but a life estate in the legacy to him, and the vesting of the legacy to George B. Knight was contingent upon his attaining the age of thirty years. As we read and construe the will, the trustees are the legal legatees to whom the money in the second and fourth clauses of the will, being the *corpus* of the trust funds held for the benefit of Harry Lee Knight and George B. Knight, was given, and in whom, for all legal purposes, title was vested. The said trust funds so vesting in them pending the period of the trust for the purposes of the trusts, they took immediate title to the *corpus* of such funds. No other rational conclusion can be drawn from the language of the will that "such money shall be distributed and paid to the legatees hereinbefore named," than that it meant those persons as legatees who took the immediate title to the legacies provided for in the will. If it be held that Harry Lee Knight is a legatee, it must as well be held, and we think with greater force, that his children, in whom the *corpus* is vested and who are to take after his life, are also legatees, and the peculiar question would be presented that is suggested by Harry Lee Knight as to the basis upon which such residuum should be divided between them; that is to say, whether Harry Lee Knight should take a portion of the residuum absolutely, such as his prospects for life under the life tables would give, and the remainder be distributed among his children, or whether we should exclude his children from the class as legatees and give all to him, or exclude him from the class as a legatee and give all to the children. The mere suggestion of such a situation is a strong argument in favor of the position that the testatrix never contemplated that such questions should arise, but rather that, whatever portion of the residuum she distributed to the fund held for Harry Lee Knight and for

George B. Knight, should follow the same course that the principal or *corpus* of the fund was directed to go and should vest in the trustees, and not in the children or in Harry Lee Knight or George B. Knight. (*In re Logan's Estate,* 131 N. Y. 456; 30 N. E. Rep. 486; *Woman's Union Missionary Society* v. *Mead,* 131 Ill. 338.) *In re Logan's Estate, supra,* is a case very similar to the case at bar upon the facts, and the reasoning therein contained is applicable to the case before us and is cogent, and we are disposed to follow it.

The next important question arising under the assignment of errors to be determined is in regard to the eleventh clause of the will, it being conceded that the devise and bequest must fail for the reason that no such institution as the Helen Huling Home is in existence or was in existence at the death of the testatrix. The decree finds that the gifts lapsed and that the real estate became intestate estate, but that the $25,000, being personal property, went into the residuum under the twelfth clause of the will. But the decree finds that only Harry Lee Knight, Emma Knight Crawford, George B. Knight, Helen Norton Carter, Mabel West Knight, Solon DeWitt Knight and Harry L. Crawford should participate in the residuum as provided for under the twelfth clause of the will, thus excluding a number of the legatees named in the will. So far as the decree holds that the devise of the real estate lapsed and became intestate estate we agree with the provision of the decree, but under the authority of *Dorsey* v. *Dodson,* 203 Ill. 32, we must hold that the $25,000 also became intestate estate, and accordingly should have been distributed to the legal heirs-at-law the same as the real estate. There is no doubt but that the general rule in vogue in a majority of the States where there is no statute governing, is that all personal property not otherwise specifically disposed of goes into the residuum unless otherwise specifically provided, and so all void or lapsed legacies of personal property go into a general residuary fund. But there is one well defined exception, which is in cases where the testator

gives legacies to the same persons that are provided for under the residuary clause.    In that event the rule seems to be that such lapsed legacy does not fall into the residuum.    In *Dorsey* v. *Dodson, supra,* it is said (p. 37) : "Where legacies are given to several legatees and the residue is bequeathed to the same legatees, it follows that the residue will not include a lapsed legacy to one of them.    To hold, in such a case, that the testator intended the lapsed legacy to fall into the residuum, was said in *Craighead* v. *Given,* 10 S. & R. 351, to hold that the testator intended to bequeath to one who died a portion of the residue, happening in consequence of his own death,—a construction which could never be supported.    Where a testator gives specific legacies to several legatees and gives the residue to them as tenants in common, if each one receives his share of the residue over and above the specific legacies he receives exactly what the testator intended to give him.    Having given to each specific sums and a specific share of the excess over the total of such sums, the proportion of those who live is not to be enlarged by a lapsed legacy.    It is not to be inferred that the testator intended that a lapsed legacy to one should fall into the residue, so that the survivors should receive a different and increased proportion of the testator's estate."    We think that part of the decree which provides that the $25,000 should go into the residuum was erroneous.    It should have held that it was intestate estate, the same as the real estate mentioned in the said clause.

It is shown by the record that there were several thousand dollars, besides the amount provided for in the eleventh clause of the will, that necessarily and properly go into the residuum, and the next question to be determined is, who participates in the residuum under the twelfth clause of the will?    It will be noticed that the language used is, "such money shall be distributed and paid to the legatees hereinbefore named, other than the said Cornelia Stone, Genevieve Parker and May Parker, to each in proportion to the legacies

hereinbefore specifically fixed and mentioned." A legatee, in legal acceptation, is a donee of personal property, and we are unable to see how, when used in their general sense, as above set forth, any other construction could be placed upon the terms of the will than that all the legatees receiving specific legacies (excluding those specifically excepted) should share in this residuum. It follows that all the legatees except Cornelia Stone, Genevieve Parker, May Parker and the Emergency Hospital should participate in the residuum according to the proportion each received of the estate, and the fact that some of the legatees are societies and corporations does not, of itself, exclude them. (*Woman's Union Missionary Society* v. *Mead, supra; Gray's Estate,* 147 Pa. 67.) As to the Emergency Hospital, it will be noted that it does not receive a specific legacy, but is to receive a legacy sufficient to produce an annuity of $50. When that provision is made, it is clear from the language of the testatrix used in the will that it was not her purpose to make the hospital the further object of her bounty, and we are of the opinion that it was not to share in the residuum.

The refusal of the court to hold that the seventh clause of the will, being the one in reference to the Emergency Hospital, was void, is assigned as error by some of the parties in interest. The ground urged is, that the gift is not of any specific sum and is therefore uncertain. The amount of the annuity that was designed by the testatrix to go to this hospital is clearly pointed out, and while it is true that the sum to be set aside may be somewhat difficult to ascertain because of the varying rate of interest that may be realized from year to year on any sum, still we think it is such a matter as can be approximately and easily ascertained, and is not for that reason void. And as courts liberally construe clauses of wills which make gifts to charitable institutions, unless there is some insurmountable reason pointed out for the same being void, we feel it our duty to uphold the provision and see no reason for going into an extended argument.

We think we have fairly considered all of the questions raised upon the errors and cross-errors assigned by the respective parties, and it necessarily follows that the decree of the circuit court of Kankakee county must be reversed and the cause remanded, with directions to that court to enter a decree in accordance with the views above expressed.

*Reversed and remanded, with directions.*