## In the Matter of the Estate of Leo Sulzbacher, Deceased.

Surrogate's Court, New York County, July 7, 1938.

*Lachman & Goldsmith,* for the executors, petitioners.

*Cohen & Cohen* [*M. J. Fass* of counsel], for Murray M. Gruhn and Rosalie Hydeman, respondents.

*David C. Lewis,* special guardian for infant.

Delehanty, S. Construction is here required to determine to whom deceased referred when he made provision for his " nephews and nieces." A further question concerns the effect of a direction in the will that the individual executor should serve without compensation. This latter question will be first considered.

Paragraph sixth of the will says: " I hereby nominate, constitute and appoint my brother, Harry Sulzbacher, and Bank of Manhattan Trust Company of No. 40 Wall Street, Manhattan, New York City, to be executors of and trustees under this my last will and testament, and I direct that neither they nor either of them be required to give any bond or other security for the faithful performance of their duties as such executors and trustees, and that my said brother shall serve without fees."

The individual trustee contends that deceased did not intend to deprive him of *commissions*. The corporate executor argues that the individual executor cannot share in commissions and that it is entitled to one full commission. The estate is under $100,000 and in ordinary circumstances a single full commission would be divided between the two executors. The special guardian contends that no commissions can be claimed by the individual executor and that the corporate executor cannot benefit thereby. He argues that the estate is required to pay only one-half of one full commission and that this is payable to and is for the exclusive benefit of the corporate executor.

Subdivision 8 of section 285 of the Surrogate's Court Act contains the following: " Where the will provides a specific compensation to an executor  *  *  *  he is not entitled to any allowance for his services, unless by a written instrument filed with the surrogate, within four months from the date of his letter,  *  *  *  he renounces the specific compensation."

No instrument of renunciation was filed by the individual executor. He is a legatee entitled to five per cent of the residuary estate. He is also a secondary life tenant of the trust of which the capital is eighty-five per cent of the residuary estate. Has he, therefore, been awarded by the will " specific compensation " in substitution for his statutory commissions? This is wholly a question of deceased's intention. Under the authorities and upon considering the entire will it is evident that deceased intended that from his estate his brother, the individual executor, should receive nothing in addition to his legacy and his eventual income from the trust. (*Matter of Mason*, 98 N. Y. 527, 533; *Matter of Kernochan*, 104 id. 618, 631; *Matter of O'Donohue*, 115 Misc. 697; *Matter of Cohen*, 128 id. 906.) This limitation the testator intended for the benefit of his estate and not for the benefit of the coexecutor. Had he designed full compensation for the coexecutor he would have said so. Accordingly on this phase of the proceeding the court holds that the construction sought by the special guardian is correct.

Deceased by the fifth paragraph of his will set up trust funds for his brother and his sister and directed that on the death of the income beneficiaries the principals of their respective funds

be distributed as follows: " upon * * * death, the trust as to this portion of my residuary estate shall terminate, and I direct that the principal thereof shall be paid over, and I give, devise and bequeath the same in that event to my nephews and nieces then living in equal shares."

The question is whether by " nephews and nieces " the testator meant to refer only to his nephew Jerome Sulzbacher and his niece Eleanore Sulzbacher (the children of his brother Harry), or intended to include Murray M. Gruhn and Rosalie Hydeman, the children of Sol R. Gruhn and his first wife. These children are not related by blood to deceased. They are stepchildren of deceased's sister who was Mr. Gruhn's second wife. In the third paragraph of his will deceased said that his " nephew, Murray M. Gruhn " should have certain rights. Moreover, it appears without dispute that the deceased at the time of his death had only *one* nephew and *one* niece though in his will he uses the plural in referring to " nephews and nieces."

In a situation such as this the court as an aid in construction must take proof of the circumstances in which the deceased found himself in making his will and proof as to relationship in which he held Murray M. Gruhn and Rosalie Hydeman. Such proof was supplied at the hearing by Dorothea Sulzbacher, sister of deceased and primary income beneficiary of the trust estate. She testified that her sister Ida married Sol Gruhn in 1915, at which time Mr. Gruhn had two children, Murray and Rosalie, and that thereafter these children visited deceased and the latter visited them. Her testimony shows that in introducing these children the deceased referred to them as his nephew and niece. As already stated, it was established that at the time his will was executed deceased had only one nephew and one niece of the blood.

Applying to these facts the primary canon of testamentary construction only one result is possible. Words mean what they are intended to mean. The flexibility of specific terms has been well described in *Matter of Logan* (131 N. Y. 456, 460, 461) where the court said:

" It is undoubtedly true, as the counsel for the appellants argue, that where the meaning of the testator is apparent from the language used, the plain import of the language cannot be departed from, and that words in a will are generally to be deemed to have been used in their ordinary and natural sense; but there is another canon of testamentary construction, equally well recognized, that when words are descriptive of a class of beneficiaries, their scope and application may depend in a large degree upon the apparent scheme of the will and the signification in which they, or kindred words, are used in it elsewhere. They may be enlarged or restricted as

may best comport with the evident intention and purpose of the testator.

"There are many apt illustrations of the application of this rule. In *Cromer* v. *Pinckney* (3 Barb. Ch. 466) and *Brower* v. *Bowers* (1 Abb. Ct. App. Dec. 214) it was held that the words 'nephews and nieces' should be construed to mean not only grandnephews and nieces, but even a greatgrandniece.

"In *Bowne* v. *Underhill* (6 T. & C. 344) the term 'children' was made to include grandchildren; in *Prowitt* v. *Rodman* (37 N. Y. 42) it was declared that it may include issue however remote, and will include such issue whenever the reason of the thing demands it; in *Low* v. *Harmony* (72 N. Y. 408) the term was in one clause of the will held to exclude grandchildren, and in another clause to include them; and in *Gelston* v. *Shields* (78 N. Y. 275) the word was limited to children of the testator by his reputed wife, and was held not to include his children by his lawful wife. So the word 'heirs' has been limited to children (*Scott* v. *Guernsey,* 48 N. Y. 106), and the heirs of a particular person to the heirs of his body (*Kiah* v. *Grenier,* 1 T. & C. 388). In *Weeks* v. *Cornwell* (104 N. Y. 325) this court held that the term 'legatees' meant the devisees of the real estate who had only a life interest therein, and excluded the remaindermen; and in *Sholl* v. *Sholl* (5 Barb. 312) the words 'all the legacies before mentioned' in the will were held to mean the legacies which were chargeable upon the real estate, and no others.

"Many similar cases might be cited, but these are enough. It is unnecessary to allude to the special circumstances which controlled the decision in each case. They were always of such a character as to afford rational grounds for the conclusion that the words construed were used in the enlarged or the restricted sense attributed to them."

It has been specifically decided in various cases that the terms "nephews and nieces" will sometimes be confined to individuals who answer to the ordinary meaning of these terms and sometimes will be extended to include persons not within the ordinary meaning thereof. (See cases collected in 2 Davids New York Law of Wills, p. 1117.) The restriction or expansion of words, their strict or loose meaning, can always be determined by parol evidence where as here the document being interpreted shows on its face that there is uncertainty on the subject. (*Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204, 208.) The court accordingly holds that Murray M. Gruhn and Rosalie Hydeman are "nephew" and "niece" respectively of deceased as those terms are used in his will.

Submit, on notice, decree settling the account and construing the will in conformity with this decision.